UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| VALENTINO ALEX HERRERA, | Case No.  1:15-cv-00525-BLW |
| Petitioner, | |
| v. | **MEMORANDUM DECISION AND ORDER** |
| ALBERTO RAMIREZ, | |
| Respondent. | |

Petitioner Valentino Alex Herrera is proceeding on his Amended Petition for Habeas Corpus Relief. (Dkt. 44.) Pending before the Court is Respondent Alberto Ramirez's Motion for Partial Summary Dismissal (Dkt. 51), requesting dismissal of Claims 1, 2, 3, 5, 6, 7, and 11 through 50 in Petitioner's Amended Petition on various procedural grounds.

When a petitioner's compliance with threshold procedural requirements is at issue, a respondent may file a motion for summary dismissal, rather than an answer. *White v. Lewis*, 874 F.2d 599, 602 (9th Cir. 1989). Rule 4 of the Rules Governing § 2254 Cases authorizes the Court to summarily dismiss a petition for writ of habeas corpus or any of its claims when "it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." The Court takes judicial

**MEMORANDUM DECISION AND ORDER - 1**

notice of the records from Petitioner's state court proceedings, lodged by the parties. *See* Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006).

Petitioner has sought several extensions of time to file a response to the pending Motion for Partial Summary Dismissal. He has lodged several sets of exhibits, requested appointment of counsel, and requested a hearing to explain his claims rather than write a response to the pending motion. The Court previously concluded that appointment of counsel is not warranted.

Upon further review of the parties' filings, the Court again concludes that this case does not qualify for appointment of counsel and no oral argument or evidentiary hearing is warranted. *See* D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order conditionally granting in part and denying in part Respondent's Motion for Partial Summary Dismissal.

## FACTUAL BACKGROUND

Petitioner was serving a 19-day sentence in the Cassia County Jail for driving without privileges. Alan Garrett, who was a former Cassia County deputy sheriff and court bailiff, incarcerated on a DUI conviction, was also an inmate at the jail.

When each inmate arrives at the jail, he is given a rigid plastic coffee mug. Jail inmates eat meals together and take turns wiping down tables afterward. Alan Garrett decided to wipe down tables after breakfast on June 4, 2006, and Petitioner left the table

**MEMORANDUM DECISION AND ORDER - 2**

to go to the bathroom. Garrett moved his own coffee cup and then Petitioner's coffee cup

to wipe underneath, setting the cups down in different places after he did so.

Inmate Roger Galow[1] witnessed the incident and testified as follows at trial:

> Alan [Garrett] was wiping down the tables and Mr. Valentino's cup was there and stuff. He moved it just a little bit and Mr. Valentino looked at me and said he was mad about it and that he was going to make Alan pay. And I said: Man, it's just a cup of coffee, you know. And he said: No, he cost me five years. I didn't know what he meant at that time.
>
> * * *
>
> I said: Five years for a cup of coffee? And he said: No, he put me in prison for his statement. And I said: Let it go, and he said no. And Alan was sitting on the other side of the table and he yelled at Garrett about moving his coffee or something, and when Garrett turned around, he threw the coffee in his face.

(State's Lodging A-7, p. 98.)

Galow testified that, after coffee was thrown in Garrett's face, Garrett got up to

clean his glasses, and Petitioner shoved Garrett's glasses into his eyes. In what Galow

classified as a defensive effort, Garrett "came across the table and grabbed ahold of

[Petitioner] and pushed him against the wall and told him to knock it off." (*Id.*, p. 99-

100.) Galow said Garrett told Petitioner, "We don't need this here." (*Id.*, p. 100.)

Galow further testified:

> At that point [Petitioner] took his cup and shoved it in Mr. Garrett's eyes, breaking the cup. Then they wrestled to the floor.
>
> * * *

---

[1] Elsewhere in the record Galow's name is spelled "Gallow."

**MEMORANDUM DECISION AND ORDER - 3**

> And all Garrett did was grab hold of [Petitioner] and
> just kept holding. And [Petitioner] kept screaming: Let me go.
> Let me go. You started all of this.

(*Id.*, p. 100.) Galow testified that Petitioner threw the first punch, and Garrett never threw a punch. (*Id.*, p. 101.)

As a result of the altercation, the State charged Petitioner with battery under Idaho Code § 18-903, enhanced from a misdemeanor to a felony pursuant to former I.C. 18-915(d) (2001), on the allegation that Petitioner committed the battery because of Garrett's former status as a "peace officer." The State later filed an amended information seeking a persistent violator enhancement for a third felony conviction. (State's Lodgings A-1, pp. 54-57; B-21, pp. 1-2.)

Cassia County Deputy Sheriff Tim Pethtel[2] interviewed Garrett after the incident. (State's Lodging A-7, pp. 118-19.) In that interview, Garett did not identify any problems between Petitioner and himself but had heard that Petitioner "was mad at him because of him signing the warrants and putting him away for five years." (*Id.*, p. 119.) Garrett said he regularly signed the warrants for people to be arrested in Cassia County, but that he didn't have anything further to do with them. Garrett told Pethtel that Petitioner may have seen Garrett's name on the warrant and assumed that he was the one who had arrested him. (*Id.*, p. 118.)

---

[2] Elsewhere in the record Pethtel's name is spelled "Pethel."

**MEMORANDUM DECISION AND ORDER - 4**

Deputy Pethtel also interviewed Petitioner after the incident. Petitioner told him that he had left the table and his coffee cup for a moment, and when he returned, his cup had been moved, and he assumed it was moved by Garrett, who was wiping tables off. Petitioner asked Garrett why he had moved his coffee cup, and Garrett began to approach him in a threatening manner, and so Petitioner threw coffee on him to stop him, and then he hit Garrett with the coffee cup when the coffee did not stop him. (*Id.*, pp. 116-17.) Pethtel said Petitioner said he had a problem with Garrett because he had been with the sheriff's office and he believed Garrett "had sent him to prison for five years." (*Id.*, p. 117.) Petitioner admitted at trial that he discussed the incident with Deputy Pethtel, but he denied saying anything like "Garrett put me away for five years." (*Id.*, p. 162.)

At trial Petitioner testified that he went to the restroom, came back, couldn't find his coffee cup, and asked where it was. Garrett said, "Oh, it's right here." Petitioner testified about what happened next:

> I just grabbed my cup and I walked around to the other side of the table and I was drinking it, because the TV is on that side, and I started watching it and Galow and Garrett were just talking back and forth.
>
> *   *   *
>
> I told [Garrett] if he would do me a favor and please don't be touching my things, you know: It's not a hard think to do, if you would, please. And I did stipulate: Please don't grab my coffee and move it around anymore.
>
> *   *   *
>
> I think he took it  as – I don't know how, but he got up, just stood straight up and said: I didn't touch your coffee. And he just blew up in an explosive manner that surprised me and he started saying that: I'm tired of you calling me a rat

**MEMORANDUM DECISION AND ORDER - 5**

> cop—a rat cop, or something to that nature. For me it's foggy
> for the simple fact that I didn't know what he was talking
> about.
>
>            \*  \*  \*
>
>     And I said: If you want my coffee that bad you don't
> have to try to take it. And he was standing up approximately
> from me to you.
>
>     I just threw it at him, but not towards his face or
> anything, just the bottom of the torso area. And's he's still a
> young man and he's quite agile and he dodged it and I grazed
> a little bit of his leg, or something like that.

(*Id.*, pp. 153-56.)

At trial, the State put on evidence that Petitioner threw the coffee in Garrett's face and battered him because of Garrett's involvement in Petitioner's past criminal case. On cross-examination, Petitioner admitted that he was arrested and served prison time on a felony charge in 1995. Petitioner's charges were filed during the time when Garrett worked for Cassia County. (*Id.*, p. 164.) The prosecutor showed Petitioner the 1995 affidavit in support of the criminal complaint in that case that bore Alan Garrett's typed name and signature. (*Id.*, pp. 165-67.) Petitioner said he didn't recall seeing Garrett's name on his criminal case paperwork, but he admitted that he served five years on the 1995 charge. (*Id.*, pp.167-68.) Petitioner admitted that Garrett brought him to court from the jail a number of times, and that Garrett had been the bailiff during Petitioner's 1995 criminal case (*Id.*, p. 168.)

Cassia County Sheriff's Deputy Cary Bristol testified that Alan Garrett's personnel file showed that Garrett took his oath of office as a law officer on October 2, 1989, and that he passed Peace Office Standards Training (POST) on October 24, 1990.

MEMORANDUM DECISION AND ORDER - 6

(*Id.*, pp. 127-28; 122-24.) Bristol testified that not every employee at the Sheriff's Office is required to be POST certified. (*Id.*, pp. 124-25.) Employees not under the requirement included civilian employees, dispatchers, and some bailiffs. (*Id.,* p. 125.) Bristol testified that Garrett's responsibilities were *not* limited to serving as a bailiff; he also filled in to "do a little extra patrol of the fair grounds," "traffic control," and "a lot of transports." (*Id.*) Garrett was POST-trained because his extra duties "may have required him to make a custodial arrest." (*Id.*, p. 126.) Bristol testified that Garrett was considered "an actual deputy with the Sheriff's Office," and that he faced life and death risks in his tasks, including making arrests with or without warrants, walking inmates from the jail to the courthouse, or driving inmates from the courthouse to Twin Falls. (*Id.*, pp. 126-27.)

In addition to the felony battery charge, the prosecutor also charged Petitioner with a persistent violator enhancement. Petitioner was offered a plea bargain agreement in exchange for dropping the persistent violator charge, but he did not accept it. Petitioner was convicted by jury of the felony battery charge and by a separate jury of the persistent violator enhancement. (State's Lodging A-1, pp.95-96, 113; A-7, pp.217-24.) He was sentenced to five years fixed on the battery charge, with a sentence of five to twenty-five years on the persistent violator charge, to run consecutive to the battery charge. (State's Lodging C-1, p. 7.)

There were several procedural oddities in Petitioner's case. The State filed an amended information to add the persistent violator charge about three months prior to trial; Petitioner's counsel received the amended information but did not notice (1) that it

had not been accompanied by a motion to amend or (2) that Petitioner was never arraigned on the enhancement. The State provided discovery on the persistent violator charge, and so Petitioner's counsel was well-aware of the factual bases for the charge. Petitioner, however, urged his counsel to file a motion to dismiss the charge on the first day of trial. The trial court permitted the amended information and simply arraigned Petitioner on the first day of trial.

After his arraignment, Petitioner admitted to the three convictions underlying the persistent violator charge. After Petitioner was convicted by jury based on the stipulation, Petitioner filed a motion for a new trial on the charge, which the trial court granted. The charge was heard by a new jury, which convicted him again.

At Petitioner's sentencing, the trial court erred in pronouncing a sentence that merged the sentence on the battery conviction with the persistent violator sentence. During direct appeal, the parties stipulated to the error and the appellate matter was stayed. Petitioner was resentenced to the same number of years—this time stated properly in the judgment.

When the appellate stay was lifted, the various claims and issues were consolidated for direct appeal, whereupon the conviction and sentences were affirmed. Petitioner filed a post-conviction action and a successive post-conviction action but received no relief.

After trial, Petitioner discovered that, when Garrett first became a sheriff's deputy on October 2, 1989, he had one year to complete his POST certification to become a

certified officer under Idaho Code 19–5109(3), but he was 22 days late in completing his certification on October 24, 1990. After certification Garrett continued to serve in his county job for approximately ten years. Petitioner had contact with Garrett in his official capacity only after he completed his certification. This fact was the subject of a new trial motion, which the state district court denied and the appellate court rejected on appeal.

Another of Petitioner's arguments was that Garrett was not a peace officer, but only a court bailiff, and that the misdemeanor charge should not have been raised to a felony. After an evidentiary hearing on the matter, the trial court found that there was sufficient evidence to have the jury decide the issue. On appeal, Petitioner's argument of insufficient evidence was rejected.

Petitioner's original federal Petition for Writ of Habeas Corpus was filed on October 28, 2015 (mailbox rule date).[3] In this habeas corpus proceeding, among other claims, Petitioner faults the following counsel for ineffective assistance during his state criminal case: Kent Jensen, who represented Petitioner in pretrial proceedings, the battery charge trial, the first sentencing enhancement trial, and the first sentencing proceeding; Michael Tribe, who represented Petitioner on a motion for a new trial and the second sentencing proceeding; and Daniel Brown, who represented Petitioner on a motion for a

---

[3] *See Houston v. Lack*, 487 U.S. 266 (1988) (a legal document is deemed filed on the date a prisoner delivers it to the prison authorities for filing by mail, rather than the date it is actually filed with the clerk of court).

**MEMORANDUM DECISION AND ORDER - 9**

new trial based on the "new" information that Garrett did not complete POST certification within one year of his hire date; and Robyn Fyfe, who represented Petitioner on direct appeal.

In the present Motion for Partial Summary Dismissal, Respondent argues that all but three of Petitioner's 50 claims are subject to dismissal for multiple reasons—the statute of limitations, noncognizability (failure to state a claim), and/or procedural default. The Court also reviews some of Petitioner's claims on the merits in the alternative to the procedural defenses asserted.

## STATE COURT RECORD ISSUES

As a matter of course in habeas corpus actions, the Idaho Attorney General provides all or most of the state court record to the Court as a courtesy, which is often helpful when the Court finds it necessary to review the context of the claims and defenses at issue. However, the law does not require provision of the entire record either to the Court or to the petitioner. *See* Rule 5 of the Rules Governing § 2254 Cases.

Rather, Rule 5 provides: "The respondent must attach to the answer parts of the transcript that the respondent considers relevant." In reviewing the record, the Court finds that several of Petitioner's state court filings in State's Lodging A-3 (for example, pages 216 to 222) are very difficult to read because of light copying. Counsel for Respondent will be required to review State's Lodging A-3 against its defenses, and reproduce for the Court any document it finds relevant to any of its defenses or to the merits of the remaining claims; or it may reproduce all of the light documents, if it desires. Petitioner

has provided, and the Court has reviewed, copies of the record that it believes are relevant, *see* Docket 69; therefore, if Respondent does not consider the difficult-to-read documents relevant to his own arguments, then they need not be produced.

## SUMMARY OF DECISION

The Court concludes that all of Petitioner's claims except 8, 9, 10, 23(m), and 26 either suffer from a fatal procedural defect or are without merit. The Court has determined that it is more judicially efficient to reach the merits of the claims that have procedural defects than to engage in an analysis to determine whether there is an equitable excuse for the procedural defect.

## APPLICABLE STANDARDS OF LAW

Federal habeas corpus relief under 28 U.S.C. § 2254 is available to petitioners who show that they are held in custody under a state court judgment and that such custody violates the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 2254(a). Summary dismissal is appropriate where "it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." *See* Rule 4 of the Rules Governing Section 2254 Cases. *Id*. The following additional standards of law are applicable to the parties' arguments and the Court's analysis.

1. **Statute of Limitations Standard of Law**

    A. *General Principles*

The Antiterrorism and Effective Death Penalty Act (AEDPA) requires a petitioner under a state conviction to seek federal habeas corpus relief within one year from several triggering dates specified in 28 U.S.C. § 2244(d)(1)(A)-(D).

The most common trigger is the first one, "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).

AEDPA also contains a tolling provision that stops or suspends the one-year limitations period from running during the time in "which a properly filed application for State postconviction or other collateral review . . . is pending." 28 U.S.C. § 2244(d)(2).[4]

The federal statute is *not* tolled between the date the direct appeal is "final" and the filing of a proper post-conviction application, or between post-conviction finality and any successive collateral review petition. *Id*. Each time statutory tolling ends, the statute of limitations does not restart at one year, but begins running at the place where it stopped before the post-conviction action was filed.

---

[4] *See Lawrence v. Florida*, 549 U.S. 327, 337 (2007). "Pending" is determined according to each particular state's law. In Idaho, an appellate case remains pending until a remittitur is issued. *See Cochran v. State*, 133 Idaho 205, 206, 984 P.2d 128, 129 (Idaho Ct. App. 1999).

Once a federal statute of limitations has expired, it cannot be reinstated or resurrected by a later-filed state court action. *See Ferguson v. Palmateer*, 321 F.3d 820, 822 (9th Cir. 2003) ("section 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed").

### B.    *Relation Back*

In 2005, the United States Supreme Court clarified that, in habeas corpus actions, "[a]mendments made after the statute of limitations has run relate back to the date of the original pleading if the original and amended pleadings "ar[i]se out of the conduct, transaction, or occurrence." Rule 15(c)(2)." *Mayle v. Felix*, 545 U.S. 644, 655 (2005), *overruled on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562–63 (2007). Because Rule 15 is applied in conjunction with the "more demanding" Habeas Corpus Rule 2(c), the words "same 'conduct, transaction, or occurrence" does not mean simply "the same 'trial, conviction, or sentence.'" *Id*. at 664. Rather, relation back is proper only when "original and amended petitions state claims that are tied to a common core of operative facts." (*Id.*) The Supreme Court gave a few examples:

- [I]n *Mandacina v. United States*, 328 F.3d 995, 1000–1001 (C.A.8 2003), the original petition alleged violations of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), while the amended petition alleged the Government's failure to disclose a particular report. Both pleadings related to evidence obtained at the same time by the same police department.

- [I]n *Woodward v. Williams*, 263 F.3d 1135, 1142 (C.A.10 2001), the appeals court upheld relation back where the original petition challenged the trial court's admission of recanted statements, while the amended petition

MEMORANDUM DECISION AND ORDER - 13

> challenged the court's refusal to allow the defendant to show that the statements had been recanted. See also 3 J. Moore, et al., *Moore's Federal Practice* § 15.19[2], p. 15–82 (3d ed. 2004) (relation back ordinarily allowed "when the new claim is based on the same facts as the original pleading and only changes the legal theory").

*Mayle v. Felix*, 545 U.S. 644, 664 (2005).

The United States Court of Appeals for the Ninth Circuit has set forth a two-step analysis to determine whether a claim in an amended petition relates back to one in the original petition for statute of limitations purposes: (1) "determine what claims the amended petition alleges and what core facts underlie those claims"; and (2) "for each claim in the amended petition, ... look to the body of the original petition and its exhibits to see whether the original petition 'set out' or 'attempted to ... set out' a corresponding factual episode, *see* Fed. R. Civ. P. 15(c)(1)(B)—or whether the claim is instead 'supported by facts that differ in both time and type from those the original pleading set forth," *Mayle*, 545 U.S. at 650, 664." *Ross v. Williams*, 950 F.3d 1160, 1167–68 (9th Cir. 2020). It is not required that the "facts in the original and amended petitions be stated in the same level of detail." *Id.*

In addition, an amendment that "invoked a legal theory not suggested by the original complaint" can relate back to the original complaint if it arises from the same "episode-in-suit." *Cf. Mayle,* 545 U.S. at 659–60 (*citing Tiller v. Atl. Coast Line R. Co*., 323 U.S. 574, 580–81 (*1*945)). For example, ineffective assistance claims relate back to claims where the underlying substantive error is based on the same set of facts. *See*

**MEMORANDUM DECISION AND ORDER - 14**

*Nguyen v. Curry*, 736 F.3d 1287, 1296–97 (9th Cir. 2013) (determining that a claim that appellate counsel was ineffective for failing to raise double jeopardy related back to a timely raised substantive double jeopardy claim), *abrogated on other grounds by Davila v. Davis,* ―― U.S. ――, 137 S. Ct. 2058 (2017). District courts following *Mayle* and *Nguyen* have held that ineffective assistance of trial counsel claims presented in a late amendment relate back to the substantive claims asserted in the original petition that underlie the ineffective assistance claims, and "vice versa." *See, e.g., Abdulle v. Uttecht*, 2020 WL 2065882 (W.D. Wash. Jan. 6, 2020)(Report and Recommendation), *relevant portion adopted by*, 2020 WL 2063772, at *2 (W.D. Wash. Apr. 29, 2020)(District Court Order)

2. **Deferential Merits Review Standard of Law (AEDPA)**

A challenge to a state court appellate judgment that addressed the merits of any federal claims is governed by Title 28 U.S.C. § 2254(d), as amended by the AEDPA. The AEDPA limits relief to instances where the state court's adjudication of the petitioner's claim:

1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d). A federal habeas court reviews the state court's "last reasoned decision" in determining whether a petitioner is entitled to relief. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991).

MEMORANDUM DECISION AND ORDER - 15

A federal court cannot grant habeas relief simply because it concludes in its independent judgment that the state court's decision is incorrect or wrong; rather, the state court's application of federal law must be objectively unreasonable to warrant relief. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Bell v. Cone*, 535 U.S. 685, 694 (2002). If fairminded jurists could disagree on the correctness of the state court's decision, then relief is not warranted under § 2254(d)(1). *Harrington v. Richter*, 562 U.S. 86, 101 (2011). The Supreme Court emphasized that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (internal citation omitted).

Though the source of clearly established federal law must come only from the holdings of the United States Supreme Court, circuit precedent may be persuasive authority for determining whether a state court decision is an unreasonable application of Supreme Court precedent. *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999). However, circuit law may not be used "to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013).

When a petitioner contests the reasonableness of the state court's factual determinations based entirely on the state court record, a federal court must undertake a § 2254(d)(2) analysis. *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004), *abrogated on other grounds as recognized in Murray v. Schriro*, 745 F.3d 984 (9th Cir. 2014). There are two general ways to challenge factual findings as unreasonable under § 2254(d)(2). "First, a petitioner may challenge the substance of the state court's findings and attempt

MEMORANDUM DECISION AND ORDER - 16

to show that those findings were not supported by substantial evidence in the state court record. Second, a petitioner may challenge the fact-finding process itself on the ground that it was deficient in some material way." *Hibbler v. Benedetti*, 693 F.3d 1140, 1146 (9th Cir. 2012) (internal citations omitted).

### 3.  **Noncognizability Standard of Law**

The habeas statute unambiguously provides that a federal court may issue a writ of habeas corpus to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a)). The United States Supreme Court has "stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011)(citing *Estelle v. McGuire,* 502 U.S. 62, 67 (1991), and *Lewis v. Jeffers,* 497 U.S. 764, 780 (1990)). Claims based on state law generally fail to state a federal habeas corpus claim upon which relief can be granted and are subject to dismissal. *See id*.

### 4.  **Procedural Default Standard of Law**

Habeas corpus law requires that a petitioner "exhaust" his state court remedies before pursuing a claim in a federal habeas petition. 28 U.S.C. § 2254(b). To exhaust a claim, a habeas petitioner must fairly present it as a federal claim to the highest state court for review in the manner prescribed by state law. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Unless a petitioner has exhausted his state court remedies relative to a particular claim, a federal district court cannot grant relief on that claim, although it does have the discretion to deny the claim. 28 U.S.C. § 2254(b)(2).

A procedurally defaulted claim will not be heard in federal court unless the petitioner shows either that there was legitimate cause for the default and that prejudice resulted from the default, or, alternatively, that the petitioner is actually innocent and a miscarriage of justice would occur if the federal claim is not heard. *Coleman v. Thompson*, 501 U.S. 722, 731(1991).

To show "cause" for a procedural default, a petitioner must ordinarily demonstrate that some objective factor external to the defense impeded his or his counsel's efforts to comply with the state procedural rule at issue. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To show "prejudice," a petitioner bears "the burden of showing not merely that the errors [in his proceeding] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982).[5]

5. **De Novo Merits Review Standard of Law**

The United States Supreme Court has held that federal courts are not required to address a procedural issue before deciding against the petitioner on the merits. *Lambrix v. Singletary*, 520 U.S. 518 (1997); *cf. Franklin v. Johnson*, 290 F.3d 1223 (9th Cir. 2002) ("appeals courts are empowered to, and in some cases should, reach the merits of habeas petitions if they are, on their face and without regard to any facts that could be developed below, clearly not meritorious despite an asserted procedural bar"); *cf. Hudson v. Jones*,

---

[5] The Court has omitted the exceptions to the statute of limitations and procedural default because it has alternatively denied the claims subject to these defenses on the merits.

MEMORANDUM DECISION AND ORDER - 18

351 F.3d 212 (6th Cir. 2003); *cf*. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

Under de novo review, if the factual findings of the state court are not unreasonable, the Court must apply the presumption of correctness found in 28 U.S.C. § 2254(e)(1) to any facts found by the state courts. *Pirtle*, 313 F.3d at 1167. As in the pre-AEDPA era, a district court can draw from both United States Supreme Court and well as circuit precedent, limited only by the non-retroactivity rule of *Teague v. Lane*, 489 U.S. 288 (1989).

6. **Harmless Error Standard of Law**

Generally, even if a constitutional error occurred, a petitioner is entitled to federal habeas relief only if he "can establish that [the error] resulted in 'actual prejudice.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Under the *Brecht* standard, an error is harmful, and habeas relief must be granted, only if the federal court has "grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict." *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995) (internal quotation marks omitted). However, some types of claims "are analyzed under their own harmless error [or prejudice] standards, which can render *Brecht* analysis unnecessary." *Jackson v. Brown*, 513 F.3d 1057, 1070 (9th Cir. 2008). Ineffective assistance of counsel claims are included in this latter category. *Musladin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009).

**MEMORANDUM DECISION AND ORDER - 19**

## DISCUSSION OF CLAIMS 1-50

One of the alleged procedural defects is whether a majority of the claims in the Amended Petition—5, 6, 7, and 11 through 50—do not relate back to the four claims in the original Petition. Petitioner's judgment became final 90 days after the Idaho Supreme Court denied his petition for review on direct appeal, which means the federal statute of limitations began to run on April 10, 2012. The federal statute ran for 258 days until it was tolled on December 24, 2012, when Petitioner filed his first petition for post-conviction relief in state court. That state court action was pending at the time Petitioner filed his federal habeas corpus petition on October 28, 2015 (mailbox rule), and, thus, the Court stayed this matter pending resolution of the state court matter. The remittitur was issued in the state post-conviction matter on April 15, 2016. The federal statute of limitations began running again on April 16, 2016, with 107 days left. That time period ended on August 1, 2016—which is the date all new claims should have been amended into Petitioner's federal habeas corpus petition.

The expiration of the federal statute of limitations was unaffected by Petitioner's filing of an untimely successive post-conviction petition for relief on January 15, 2016, more than three years after the expiration of the one-year state post-conviction deadline. (State's Lodging E-2, p. 568.) The Idaho Court of Appeals affirmed dismissal of that action on untimeliness grounds, because Petitioner did not provide a sufficient reason for the late filing. (State's Lodging F-1, p. 6.) The successive post-conviction petition did not toll the federal statute of limitations, because it was not a properly filed application for

state collateral relief. *See Pace*, 544 U.S. at 417. That is one of the risks petitioners bear when they petition the state courts more than once.

The Amended Petition for Writ of Habeas Corpus filed on February 15, 2019, raised 46 new claims. Because the new claims were not filed within the federal statute of limitations period, the question at hand is whether they relate back to the four claims "attempted to be set out" in the original petition, such that they can be considered timely.

For purposes of the statute of limitations analysis, Petitioner's original four claims were stated as follows:

- "Due Process to a Fair Trial Violation: There was constitutionally insufficient evidence to support the verdict, that the victim was a peace officer at the time he encountered Mr. Herrera, and lawfully exercising police powers. Evidence established victim did not, and verdict is contrary to the evidence presented at trial." (Dkt. 3, p. 2.)

- "Due Process violation, prosecutorial misconduct: During closing arguments, prosecutor placed the burden of proof on Herrera, and during trial forced defendant to comment on the veracity of the state's witnesses and forcing Herrera to call them liars. (Dkt. 3, p. 2.)

- "Arraignment violation, Due Process: Arraigned without counsel present, in Magistrate Court, as well as District Court." (Dkt. 3, p. 3.)

- "I presented claims of ineffective assistance of appellate counsel but these claims were never argued because post conviction counsel did not argue them." (Dkt. 3, p. 4.)

Petitioner attached the Idaho Court of Appeals' direct review opinion as an exhibit to his original federal Petition. (*See* Dkt. 3-1; also found in the record at State's Lodging B-21.)

**MEMORANDUM DECISION AND ORDER - 21**

The direct appeal opinion supplements the facts supporting the four claims in the original

Petition. *See Ross v. Williams*, 950 F.3d at 1167–68.

As a shorthand way of discussing the four original claims when trying to match up

the 46 new claims to them for statute of limitation purposes, the Court will refer to the

four original claims as follows: (1) the "peace officer" claim; (2) the "prosecutorial

misconduct" claims; (3) the "arraignment" claim; and (4) the "ineffective assistance of

appellate counsel" claim. In addition, the Court notes that Petitioner's Amended Petition

presents Claims 1-50 (Respondent's numbering) as Claims A-Z and A-C, with various

subparts. To accommodate both claim identification systems, the Court uses both a

number and a letter to refer to each claim in the headings.

### Claim 1/A

Claim 1 is there was insufficient evidence to support the verdict. (Dkt. 44, p. 8.)

1. **Procedural Default**

Respondent asserts that this clam is procedurally defaulted because Petitioner

presented this claim to the Idaho Court of Appeals but did not thereafter present the claim

to the Idaho Supreme Court in a petition for review. The Court disagrees with

Respondent's analysis of the state court record, finding that Petitioner *did* raise the

insufficient evidence claim in his direct appeal (State's Lodging B-6, p. 12) and petition

for review (State's Lodging B-24, p. 3); however, his reference to *federal* law was vague.

Petitioner generally alleged in his petition for review brief that the judgment of

**MEMORANDUM DECISION AND ORDER - 22**

conviction and sentence were "entered in contravention of the protections afforded by the United States Constitution, as set forth in his opening and reply briefs." (*Id.*, p. 1.)

This incorporation-by-reference style of presentation is permissible. In *Insyxiengmay v. Morgan*, 403 F.3d 657, 668-669 (9th Cir. 2005), the court held that an appendix attached to a motion for discretionary review may be considered for purposes of fair presentation if not prohibited by state rule. Idaho Appellate Rule 118(c)(2) provides that "after review is granted" and "if review is granted, the Supreme Court will rely on the original briefs filed by the parties and considered by the Court of Appeals." It is unclear from the Rule whether the Idaho Supreme Court looks to the brief *when deciding* to grant a petition for review, but that seems logical and implicit in the Rule. Because the Rule does not prohibit referencing the appellate briefs or attaching an appendix as a way to present arguments to the state appellate courts, and because Idaho has specified no prohibitions on how to accomplish the presentation of issues in a petition for review (either by rule or case law), the Court concludes that Claim 1/A was properly presented to the Idaho Supreme Court, and the Court will consider the merits of the claim below.

Reviewing Petitioner's appellate briefing, the Court finds, at first glance, that his reference to the Fourteenth Amendment seems to be merely a "drive-by citation, detached from any articulation of an underlying federal legal theory." *Castillo v. McFadden*, 399 F.3d 993, 1003 (9th Cir. 2005). The reply brief vaguely states that the

conviction and sentence "violate the Fourteenth Amendment and must be vacated."[6]
(State's Lodgings B-24, p. 2; B-6, B-24.)

However, a deeper look shows that this is an instance where "the state-law rule
subsumes the federal standard—that is, if a state law rule is at least as protective as the
federal standard—then the federal claim may be regarded as having been adjudicated on
the merits." *Johnson v. Williams*, 568 U.S. 289, 301 (2013). In the opening brief,
Petitioner failed to cite to the Fourteenth Amendment at all, but he did cite to *Idaho v.
Medina*, 909 P.2d 637, 645 (Ct. App. 1996), which closely tracks the federal standard for
insufficient evidence. To meet due process standards, *Medina* instructs, the prosecutor
must have presented at trial "substantial evidence upon which a rational trier of fact could
have found the essential elements of the crime beyond a reasonable doubt." *Compare
Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (Sufficient evidence supports a conviction
if "any rational trier of fact could have found the essential elements of the crime beyond a
reasonable doubt.").

Therefore, the Court concludes that Petitioner fairly presented this claim to the
Idaho Supreme Court as a Fourteenth Amendment due process claim. However, in this
instance, fairly presenting the claim does not automatically make this claim a cognizable
Fourteenth Amendment due process claim, because the particular subject matter of this
"due process" claim is centered on state, not federal law. Petitioner is urging this Court to

---

[6] The record reflects that Petitioner complained to direct appeal counsel that the opening brief contained
too few references to federal law, to which counsel responded that she would add more to the reply brief.

find that there is insufficient evidence based on the Idaho Court of Appeals' interpretation of several governing state statutes—something it cannot do.

### 2. **Noncognizability**

In *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011), the United States Supreme Court reiterated that "'federal habeas corpus relief does not lie for errors of state law.'" (*Id*. at 219, citing *Estelle v. McGuire,* 502 U.S. 62, 67 (1991), and *Lewis v. Jeffers,* 497 U.S. 764, 780 (1990).) For example, in *Swarthout*, the Supreme Court explained that "it [was] no federal concern ... whether California's "some evidence" rule of judicial review (a procedure beyond what the Constitution demands) was correctly applied." *Id*. at 221.

There are some instances where a state's interpretation of its statutes warrants federal review. However, this is not one of them. Petitioner's argument over how the "peace officer" statutes were interpreted is not an instance of shifting the burden of proof that would trigger the need for a due process analysis, as in *In re Winship*, 397 U.S. 358, 364 (1970) (Due Process Clause requires the prosecution to prove beyond a reasonable doubt every fact necessary to constitute the crime charged), or *Mullaney v. Wilbur*, 421 U.S. 684, 703 (1975) ("Due Process Clause requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation when the issue is properly presented in a homicide case.").

Rather, this case falls within the general rule governing federal review of state court interpretations of state statutes—that a federal court may review a state court's interpretation of state law only when the state court's interpretation (1) is "untenable,"

**MEMORANDUM DECISION AND ORDER - 25**

meaning "incapable of being maintained or supported," or (2) "amounts to a subterfuge to avoid federal review of a constitutional violation." *Taylor v. Kincheloe*, 920 F.2d 599, 609 (9th Cir. 1990); *see Mullaney v. Wilbur*, 421 U.S. 684, 691 & n.11 (1975); *Oxborrow v. Eikenberry*, 877 F.2d 1395, 1399 (9th Cir.), *cert. denied*, 493 U.S. 942 (1989); *Melugin v. Hames*, 38 F.3d 1478, 1487 (9th Cir. 1994) (in the face of a First Amendment challenge brought in a habeas petition, the federal court was bound by the Alaska appellate court's interpretation of a state criminal statute and its application to petitioner's conduct, because "a question of state statutory construction, ... is a question of state law, as factually applied" in the petitioner's case).

In Petitioner's direct appeal, he contended that "the State did not introduce sufficient trial evidence to prove that Garrett was a former peace officer." (State's Lodging B-21, p. 3.) The Idaho Court of Appeals relied upon and interpreted several statutes in its opinion rejecting Petitioner's claims. Those statutes (in the form in effect at the time of Petitioner's crime), included:

Idaho Code § 18-915(d):   "For committing a violation of the provisions of section 18-903, Idaho Code, except unlawful touching as described in section 18-903(b), Idaho Code, against the person of a peace officer, sheriff or police officer because of the victim's former or present official status, the offense shall be a felony punishable by imprisonment in a correctional facility for a period of not more than five (5) years, and said sentence shall be served consecutively to any sentence being currently served."

**MEMORANDUM DECISION AND ORDER - 26**

I.C. § 19-5101(d):    A "peace officer" is defined as "any employee of a police or law enforcement agency which is a part of or administered by the state or any political subdivision thereof and whose duties include and primarily consist of the prevention and detection of crime and the enforcement of penal, traffic or highway laws of this state or any political subdivision."

I.C. § 19–5109(b):    After January 1, 1974, any peace officer as defined in section 19-5101(d), Idaho Code, employed after January 1, 1974, except any elected official or deputy serving civil process, the deputy director of the Idaho state police, or any person serving under a temporary commission with any law enforcement agency in times of natural or man-caused disaster declared to be an emergency by the board of county commissioners or by the governor of the state of Idaho, or those peace officers whose primary duties involve motor vehicle parking and animal control pursuant to city or county ordinance, or any peace officer acting under a special deputy commission from the Idaho state police, shall be certified by the council within one (1) year of employment; provided, however, that the council may establish criteria different than that required of other peace officers for certification of city police chiefs or administrators within state agencies having law enforcement powers, who, because of the number of full-time peace officers they supervise, have duties which are primarily administrative. Any such chief of police or state agency administrator employed

in such capacity prior to July 1, 1987, shall be exempt from certification.

I.C. § 19–5109(c):        No peace officer shall have or exercise any power granted by any statute of this state to peace officers unless such person shall have been certified by the council within one (1) year of the date upon which such person commenced employment as a peace officer, except in cases where the council, for good cause and in writing, has granted additional time to complete such training.

The Idaho Court of Appeals analyzed Petitioner's argument as follows:

Herrera contends that because trial evidence showed that Garrett was first sworn into office as a deputy on October 2, 1989, and was not certified by the Peace Officer Standards and Training Council (POST) until more than one year later on October 24, 1990, and because the State failed to prove that Garrett was granted additional time from the POST Council, by application of Idaho Code § 19–5109(c) the State necessarily failed to prove that Garrett ever had "official status" as a peace officer. Therefore, Herrera reasons, an element of the offense under I.C. § 18–915(d) was not satisfied. On this theory, Herrera asks this Court to reverse his conviction for insufficient evidence.

Herrera's argument presents an issue of statutory interpretation. The objective of statutory interpretation is to give effect to legislative intent. *State v. Yzaguirre*, 144 Idaho 471, 475, 163 P.3d 1183, 1187 (2007). In this task, we are "guided by general principles of statutory construction and a common sense appraisal of what the legislature intended." *Lawless v. Davis*, 98 Idaho 175, 176, 560 P.2d 497, 498 (1977); *State v. Paciorek*, 137 Idaho 629, 632, 51 P.3d 443, 446 (Ct.App.2002). Constructions of a statute that would yield an absurd result are disfavored. *State v. Allen*, 148 Idaho 578, 580, 225 P.3d 1173, 1175 (Ct.App.2009).

**MEMORANDUM DECISION AND ORDER - 28**

Therefore, courts are free to consider the effect and consequence of differing possible interpretations. *State v. Yager*, 139 Idaho 680, 690, 85 P.3d 656, 666 (2004).

Herrera's argument is untenable. It inherently requires an interpretation of Section 19–5109(3) to mean that if a person is not POST certified within one year of commencing employment as a peace officer, that person can never thereafter have "official status" as a peace officer or be "duly authorized" to be a peace officer; and even if the individual is later POST certified and works as a peace officer for many years, he or she never becomes one. This could not have been the legislature's intent, and such an interpretation would lead to an absurd result. We construe this statutory provision to mean that if a peace officer is not POST certified within one year of commencing employment and no extension is granted, the statute precludes the individual from having or exercising any statutory authority as a peace officer until he or she is certified.

Here, the State presented evidence that Garrett was hired by the Cassia County Sheriff's Department in 1989 and worked for that law enforcement agency for over ten years. He sometimes worked as a bailiff at the Cassia County Courthouse, but at other times worked as a peace officer, conducting patrol, making arrests, and signing warrant applications. Garrett wore a uniform and badge and carried a gun. His supervisor testified that Garrett was authorized to enforce the laws of the state of Idaho and was considered a deputy sheriff. Garrett was POST certified on October 24, 1990. Hence, Garrett was an "official" peace officer both for one year after he commenced employment as a peace officer, *see State v. Wengren*, 126 Idaho 662, 666, 889 P.2d 96, 100 (Ct.App.1995), and after his POST certification on October 24, 1990. While Garrett may not have been an "official" peace officer between October 2 and October 24, 1990, that is of no import to this case. The trial evidence was sufficient to show that Garrett was a former peace officer.

(State's Lodging B-2, pp. 4-5.)

Petitioner has provided a letter from the state of Idaho's POST Council showing that the Cassia County Sheriff's Office did not submit a request for extension of time for Garrett to certify, and that the POST Council did not grant any additional time for Deputy Garrett to be certified. (Dkt. 65-2, p. 32.) Regardless, the POST Council certified Garrett on October 24, 1990. (Dkt. 65-1, p. 28.)

The purpose of the statute is not simply to have deputies certify within one year *or not at all*—it is to provide a reasonable time frame for doing so and to prohibit persons who are not certified from performing peace officer tasks. An official written extension granted by the POST Board allows a peace officer to be able to act with statutory authority beyond the one-year mark despite not being certified. Lack of an official extension simply meant that Garrett was not certified after his one year mark and before his certification.

At the time Garrett performed the acts related to Petitioner's criminal case, he had been certified for about five years. There is no state precedent suggesting that the statute's intent was other than the way the Idaho Court of Appeals interpreted it. Petitioner has provided an attorney general opinion and legislative history, but neither shows that the intent of the statute was to prohibit late-certifying officers from ever becoming certified. (*See* Dkt. 65-1.)

This Court concludes that, far from being untenable, the result reached is entirely logical. Nothing in the statue suggests that certification obtained 22 days after the deadline, where an extension was neither sought nor granted but was available, would

render every act Garrett performed in ten subsequent years of serving as a deputy sheriff unauthorized acts.

Federal case law supports the Idaho Court of Appeals' decision. *See Aponte v. Gomez*, 993 F.2d 705, 707–08 (9th Cir. 1993)(state statutory interpretation was not untenable where it was "based upon well founded rules of statutory construction" and is "entirely logical"); *see Johnson v. Nelson*, 142 F. Supp. 2d 1215, 1227 (S.D. Cal. 2001) (state statutory interpretation not untenable where it was "based upon well founded rules of statutory construction," the court "looked at the purpose behind the statute as expressed by the legislature, and the "court also looked at the statutory scheme as a whole and to how similar portions of the California Penal Code referenced in the SVP Act had been interpreted by courts.")

Further, although the interpretation of Idaho state law was foundational to the opinion, nothing in the opinion indicates an attempt to avoid federal review of a constitutional question; indeed, beyond the Idaho state statutory interpretation, the Idaho appellate courts employed a standard akin to *Jackson v. Virginia. See Aponte,* 993 F.2d at 707. Therefore, as a matter of state statutory interpretation, Claim 1 is noncognizable despite its label as a Fourteenth Amendment Due Process Clause claim.

3. **Merits**

Even if the Court looks beyond the statutory interpretation issue to whether the record contains constitutionally sufficient evidence to support the guilty verdict, it answers that question in the affirmative. In *Jackson v. Virginia*, the United States

Supreme Court explained that, even if the record supports conflicting inferences, a court must nevertheless "presume—even if it does not affirmatively appear on the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." 443 U.S. at 326. The court may not substitute its judgment for that of the jury. *See Cavazos v. Smith*, 566 U.S. 2, 2 (2011) (finding Ninth Circuit erred by substituting its judgment for that of California jury on the question whether the prosecution's or defense's expert witnesses more persuasively explained the cause of death).

In *Jackson v. Virginia*, the Court explained:

> Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Johnson v. Louisiana*, 406 U.S., at 362, 92 S.Ct., at 1624–1625. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution. The criterion thus impinges upon "jury" discretion only to the extent necessary to guarantee the fundamental protection of due process of law.

443 U.S. at 319. Only if the Idaho Court of Appeals "unreasonably applied the *Jackson* standard," or issued an opinion that is "contrary to" that standard may a writ of habeas corpus issue for evidentiary insufficiency.

**MEMORANDUM DECISION AND ORDER - 32**

At trial, Deputy Bristol testified that Garrett functioned as a peace officer. Garrett performed duties other than as a courtroom bailiff; for example, some of the very acts by which Petitioner knew Garrett were his peace officer duties of transporting prisoners (including by car or commercial airplane flight) or walking them back and forth from the jail to the courthouse, where he carried a gun and was charged with preventing escapes. Deputy Bristol emphasized that these duties had the same life-and-death risks that other sheriff's deputy duties entailed.

The jury had sufficient evidence upon which to find that (1) Garrett was more than a mere bailiff and was a peace officer, and (2) Petitioner struck Garrett because of Petitioner's belief that Garrett had "cost him five years of his life," by his involvement in Petitioner's prior criminal case. The Idaho Court of Appeals' decision comports with the *Jackson* standard and did not violate Petitioner's federal due process rights under §2254(d)(1). The decision is also supported by substantial evidence in the record, such that Petitioner has failed to show that the Idaho Court of Appeals' decision is an unreasonable finding of fact under § 2254(d)(2). Accordingly, on this alternative merits-based analysis, Claim 1 fails on the merits under both AEDPA deferential review and de novo review. This claim will be dismissed with prejudice.

### Claim 2/B

Claim 2 is that the Idaho Court of Appeals engaged in "judicial misconduct" by misconstruing Idaho Code § 19-5109(b) and (c) in a manner contrary to *Hicks v. Oklahoma*, 447 U.S. 343 (1980). *Hicks* held that, if a state statute provides for a sentence

to be imposed by a jury, a state-created liberty interest exists that a state court cannot arbitrarily deny a defendant under the Fourteenth Amendment's Due Process Clause. Petitioner relies on *Hicks* generally to assert that, because the state legislature enacted Idaho Code § 19–5109(c) for the purpose of preventing peace officers who did not become certified within one year of appointment from ever becoming certified at a later date, the Court of Appeals' wrongful interpretation of the statute arbitrarily denied him a state-created right applicable generally to criminal defendants under *Hicks. See id.*, 447 U.S. at 346-47. (Dkt. 44, p. 12-14.) Petitioner argues that the Court of Appeals cannot "construe an unambiguous statute of limitation as it did in this case to trump the plain meaning of one year to certify with the council to mean whenever they certify," because that interpretation "violates the cardinal principles of statutory construction—it both annuls the one year limit and calls for an absurd result, an optional statute of limitations." (Dkt. 44, p. 13.)

### 1. **Procedural Default**

Claim 2 is procedurally defaulted because Petitioner did not present a *Hicks* claim to the Idaho Supreme Court in a proper manner, and it is now too late to do so.

### 2. **Noncognizability**

Respondent asserts that Claim 2 is noncognizable because federal relief does not lie for errors of state law interpretation. Analysis of this claim follows the same analysis as Claim 1—that the claim indeed is noncognizable because it asks the federal court to

**MEMORANDUM DECISION AND ORDER - 34**

rule on the propriety of the Idaho Court of Appeals' interpretation of state statutes—which interpretation is reasonable, not untenable, and not an obvious subterfuge to avoid federal review.

### 3. **Merits**

Assuming for the sake of argument that the claim states a federal issue, the Court concludes that it fails on the merits. Petitioner argues that the one-year statutory deadline for a peace officer to become certified is a "statute of limitations." Petitioner is erroneously characterizes the statute as a "statute of limitations," which is legal term of art that means a fixed time period in which a person may bring a lawsuit for a specific type of wrong or injury, and after which, no lawsuit can be brought. *See, e.g.,* I.C. § 5-201 (entitled, "Limitations in General," and providing: "Civil actions can only be commenced within the periods prescribed in this chapter after the cause of action shall have accrued, except when, in special cases, a different limitation is prescribed by statute"). The purpose of a statute of limitations is to protect potential defendants who otherwise would not be on notice as to how long they might be at risk to be sued after an incident.

A review of the at-issue statute shows that the legislature did *not* label the statute at issue a "limitations" statute, nor did it use the terminology "limitations" in its text. Petitioner has provided nothing supporting his contention that the legislature intended this to be a "statute of limitations," and, indeed, if it had so intended, it would have

specified that an offended person could not sue a peace officer outside of the one-year period of time. This sounds nonsensical, because it is.

Accordingly, the Court concludes that the Idaho Court of Appeals' interpretation of the statute requiring peace officer training is well-reasoned and gives practical effect to the statute's obvious purpose—to ensure that all peace officers receive proper training within one year of hire; and, if they do not receive such training within the one-year time frame and do not receive an extension of time in which to obtain certification, the obvious consequence is that they are unauthorized to act and can be dismissed by the county. Here, Garrett did not certify within one year, but the county took no steps to terminate him and the POST Board took no steps to deny him certification, but instead permitted him to become certified 22 days later.

Petitioner has not shown that he had a *Hicks*-like state-created liberty interest in having the stat court conclude that Garrett was not a peace officer for ten years because he was 22 days late in obtaining his POST certification. Hence, the Court concludes that this claim fails on the merits as a federal due process claim—whether construed under *Hicks* or under any due process theory—under the de novo review standard of review. Claim 2 will be denied and dismissed with prejudice.

### Claims 3/C and 4/C

Claim 3 and 4 assert that Garrett should not have been considered a peace officer under Idaho Code § 18-915(d), and, therefore, the state district court erred in denying Petitioner's pretrial motion to dismiss the felony charge based on that theory and

**MEMORANDUM DECISION AND ORDER - 36**

"misinstruct[ing] the jury on a matter vital to its verdict." (Dkt. 44, p. 13.) Petitioner asserts that the Idaho Court of Appeals' construction and application of the statute in his case violated his due process rights under *Estelle v. McGuire*, 502 U.S 62 (1991). In *Estelle*, the United States Supreme Court discussed whether evidence of a prior injury and a jury instruction regarding the same "so infused the trial with unfairness as to deny due process of law." *Id*. at 75.

1. **Procedural Default**

On direct appeal, the Idaho Court of Appeals addressed a somewhat similar issue in the context of a jury instruction claim, but rejected it on procedural grounds:

> Herrera also contends that the district court erred by not instructing the jury on the definition of "bailiff." He cites no authority in support of the novel proposition that a court must define in jury instructions a word that was not used anywhere else in the instructions or in the charging documents. Further, Herrera did not request such an instruction, and he makes no claim that the failure to do so constituted fundamental error. Issues that have not been preserved by objection in the trial court will not be reviewed on appeal absent fundamental error. Therefore, we will not further address the issue.

(Dkt. 3-1, p. 6.)

Claims 3/C and 4/C are procedurally defaulted because Petitioner did not present an *Estelle* claim to the Idaho Supreme Court in a procedurally proper manner, because the alleged error was not preserved for review, and it is now too late to do so.

2.  **Noncognizability**

Respondent asserts that these claims are noncognizable because federal relief does not lie for errors of state law interpretation. Analysis of this claim follows the same analysis for Claims 1 and 2 above—these claims are noncognizable and fail to state a federal claim upon which relief can be granted because they ask the federal court to rule on the propriety of the Idaho Court of Appeals' interpretation of state statutes—which interpretation is reasonable, not untenable, and not an obvious subterfuge to avoid federal review.

3.  **Merits**

Assuming for the sake of argument that these claims state a federal issue, the Court concludes that they fail on the merits. Before trial, Petitioner's counsel filed a motion to dismiss the charges, arguing that Garrett, a bailiff, could not be a peace officer within the meaning of I.C. § 18-915(d). The trial court held an evidentiary hearing on the issue.

After the hearing, the trial court found that Garrett carried a firearm as part of his job as a bailiff, had a badge, had the authority to arrest and take people into custody, transported inmates, and served warrants. The trial court also noted that the bailiff job description including controlling and preventing problems including threats of violence and escape, which were duties "one would expect a peace officer to engage in." The trial court reasoned that, "although it was "possible that in some situations, in some counties, bailiffs might not be officer," Garrett was a peace officer when he was serving as bailiff for Cassia County, based upon the particular facts of the case. (*See* State's Lodging B-21,

**MEMORANDUM DECISION AND ORDER - 38**

pp. 2-3.) Therefore, the trial court denied the motion to dismiss the felony charge, and the case proceeded to jury trial.

At trial, Garrett testified that his paycheck always identified him as a bailiff. However, he also testified that he carried a firearm and wore a badge as part of his duties as a bailiff. He also assisted law enforcement at parades and fairs. When not needed at the courthouse, Garrett would serve arrest warrants. As part of his duties with the County, Garrett signed affidavits supporting criminal complaints. (State's Lodging A-7, pp. 64-65.)

The jury was instructed that a "peace officer includes a member of the Idaho State Police, a sheriff or deputy sheriff, a city policeman or marshal, a constable, or any other officer duly authorized to enforce municipal, county, or state laws." (State's Lodging A-7, p. 190, Jury Instruction 16.) Petitioner argues that the jury was neither instructed that Petitioner could be found guilty of battery on a bailiff nor provided an instruction defining the term "bailiff." Therefore, he concludes, his conviction must be vacated.

Idaho Code § 18-915, entitled "Assault or battery upon certain personnel — Punishment" specifies that additional punishment is authorized for "[a]ny person who commits a crime provided for in this chapter against or upon a justice, judge, magistrate, prosecuting attorney, public defender, peace officer, bailiff, marshal, sheriff, police officer ... or ... deputies or agents ... and the perpetrator knows or has reason to know of the victim's status." Petitioner interprets this statute to mean that a person cannot be a peace officer and a bailiff.

**MEMORANDUM DECISION AND ORDER - 39**

The Idaho Court of Appeals rejected Petitioner's underlying reason, as follows:

> Herrera's argument is that because Idaho Code § 18–915 refers to peace officers and bailiffs in the disjunctive, as a matter of law the two offices are mutually exclusive and a person cannot be both, either simultaneously or sequentially. This argument carries no logic and therefore demonstrates no error in the denial of his motion.

(Dkt. 3-1, p. 3.)

This Court agrees. Whether Garrett also could be classified as a bailiff does not mean that he could not, at the same time, be classified as a peace officer. In other words, Cassia County used peace officers as bailiffs. Garrett had the same authority to do what other peace officers who were not bailiffs could do, but a bailiff who was not a peace officer could not do everything that Garrett did.

In addition to the testimony of the victim and the eyewitness, Petitioner's own words—admitted into evidence through the testimony of other witnesses—tend to show that he attacked the victim because he believed the victim had been a peace officer. Petitioner said that the victim had previously "cost [him] five years" and "he put me in prison." Petitioner also called the victim a "narc cop." None of those assertions apply to a mere bailiff. Petitioner denies these statements, but the jury believed Petitioner's admissions presented through the testimony of Garrett, Pethtel, and Galow.

The testimony cited by the Idaho Court of Appeals is sufficient upon which to find that the victim performed dual functions, and that Petitioner attacked the victim because of his peace officer, not his bailiff, functions. Based on the evidence before the court, Petitioner's Motion to Dismiss was meritless and he was not entitled to an instruction

MEMORANDUM DECISION AND ORDER - 40

exclusively about a bailiff's functions. Nor has Petitioner provided any legal authority to insist that due process required an instruction defining the term "bailiff," when that term was not an element of the crime or otherwise found in the charging documents. Therefore, Claims 3 and 4—construed as federal due process claims under *Estelle*—do not have factual or legal support in the record. Claims 3 and 4 will be denied on the merits and dismissed with prejudice.

### Claim 5/D

Claim 5 is that the state district court's denial of Petitioner's motion to continue was an abuse of discretion and a denial of his due process rights arising from a state liberty interest. (Dkt. 44, p. 15.) He cites *Clemons v. Mississippi*, 494 U.S. 738 (1990), for this proposition. *Clemons* was a death penalty case, where the Supreme Court recognized that "when state law creates for a defendant a liberty interest in having a jury make particular findings, speculative appellate findings will not suffice to protect that entitlement for due process purposes." *Id*. at 746. The *Clemons* court held that the federal Constitution does not prevent a state appellate court from upholding a death sentence that is based in part on an invalid or improperly defined aggravating circumstance either by reweighing of aggravating and mitigating evidence or by performing a harmless error review. Petitioner offers no plausible explanation about how *Clemons* applies to the denial of the motion to continue in his case.

**MEMORANDUM DECISION AND ORDER - 41**

1. **Procedural Default**

Petitioner's citation to *Clemons* and the addition of the words "due process" do nothing to transform his state "abuse of discretion" claim into a federal claim. Because Petitioner presented no federal theory to the Idaho Supreme Court, this claim is procedurally defaulted.

2. **Noncognizability**

Petitioner asserts that the trial court *abused its discretion* in denying his motion to continue. A state law "abuse of discretion" theory is not a cognizable habeas corpus claim.

3. **Statute of Limitations**

Claim 5—that the district court abused its discretion in denying Petitioner's motion to continue the trial (Dkt. 44, p.15)—does not arise out of the same conduct, transaction, or occurrence as the peace officer, prosecutorial misconduct, arraignment, or appellate counsel claims attempted to be set out in the original Petition.[7] Therefore, Petitioner cannot rely on them to argue relation back, and Claim 5 is barred by the statute of limitations. The Court will not provide Petitioner with an opportunity to show he can overcome the untimeliness issue on equitable tolling grounds, because his claim is alternatively denied on the merits.

---

[7] The factual basis of this claim is included in the attachment to the original Petition—the Idaho Court of Appeals' opinion (State's Lodging B-21, pp. 6-7). However, an attachment must be support for a claim in the original Petition; the courts are not required to sift through a court opinion to find claims not attempted to be set out in the original Petition.

MEMORANDUM DECISION AND ORDER - 42

4. **Merits**

Construing this claim as one with a federal basis, the Court finds it wholly without merit. Denial of a continuance rises to the level of a constitutional violation only when there is "an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay.'" *Morris v. Slappy*, 461 U.S. 1, 11–12 (1983) (quoting *Ungar v. Sarafite*, 376 U.S. 575 (1964)). The circumstances of a particular case determine whether the denial of a continuance is so arbitrary as to violate due process. *Id.* at 589 ("There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied."). A defendant must also show that the denial of a continuance actually prejudiced his or her defense. *Brecht v. Abrahamson*, 507 U.S. at 637 (a federal habeas court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the "substantial and injurious effect" standard before it can grant relief).

Defense counsel indicated to the court that he had a conflict with the trial date because he had several pretrial conferences in other cases already scheduled on the same date. The court indicated that it would not move the trial, but expected counsel to move the pretrial dates, because they were non-dispositive matters and because Petitioner's speedy trial rights were at stake. (Dkt 44, p. 15.) Petitioner's trial counsel was able to

**MEMORANDUM DECISION AND ORDER - 43**

move the pretrial conferences in his other cases to a different date to permit Petitioner's trial to go forward as scheduled.

Nevertheless, Petitioner asserts that the prosecutor and the state district court were incorrect about the speedy trial deadline; thus, that error "was not harmless." The Idaho Court of Appeals addressed this claim on the merits and determined that Petitioner failed to show that denial of a continuance prejudiced his substantial rights. The court observed: "At no time did defense counsel assert that he was unprepared for trial or that additional time would aid the defense." (State's Lodging B-21, p. 7.) Therefore, the court concluded, because Petitioner did not show "any change in evidence, trial tactics or defense presentation that would have occurred had a continuance been granted, he has not established prejudice from the denial of his motion." (*Id.*)

This Court concludes that Petitioner's due process rights were not violated by denial of the continuance. Petitioner has not provided any facts that show he suffered harm from proceeding to trial as scheduled.

Petitioner has not shown that the Idaho Court of Appeals' opinion is contrary to the United States Supreme Court precedent set forth above, or that it had a substantial and injurious effect on his trial. The same outcome results under de novo review. Claim 5 will be denied on the merits and dismissed with prejudice.

### Claim 6/E

Claim 6 of the Amended Petition is that the district court violated Petitioner's right to due process by sua sponte permitting the state to file an amended information on the

first day of trial. (Dkt. 44, p.16.) The prosecutor actually had filed the amended information that included the persistent violator charge about three months prior to trial, on September 26, 2006; however, the prosecutor neglected to ask for leave of court to do so. (State's Lodging A-1, pp. 54-57.) Though there is no mailing certificate on the amended information, Petitioner's counsel admitted to having received it three months prior to trial and was on notice that the State was pursuing a persistent violator enhancement. (State's Lodging A-7, p. 27.) On September 29, the prosecutor provided discovery on the enhancement to defense counsel, referencing the amended information and providing copies of the three informations and/or judgments that would be used as the basis for the enhancement.

Petitioner moved to dismiss the information on the morning of trial and notified the court that he had never been arraigned on the enhancement. The court permitted the prosecutor to make an oral motion to permit the second amended information to be filed.

The court then arraigned Petitioner on the spot, reading him the prior felony charges that would be used as the basis for the persistent violator enhancement. The trial court explained: "The persistent violator charge is not a separate charge. It's simply allegations regarding prior felonies that would authorize—actually provide for an enhanced penalty in the event you are found guilty of the crime set forth in part one of the information. That enhanced penalty is five years to life imprisonment."

Then the following colloquy occurred:

Court:      Do you understand the nature of the
            charge against you in the amended

| | |
|---|---|
| | information and the maximum penalty provide? |
| Petitioner: | No, I don't. |
| (Off the record discussion) | |
| Petitioner: | No, I don't understand it. I'm sorry. |
| Court: | What is it you don't understand, sir? |
| Petitioner: | Just to not upset the court in any way, I'll just say that I do. |
| Court: | Do you understand the nature of the charges? |
| Petitioner: | I do. |
| Court: | Do you understand the penalty provided? |
| Petitioner: | I do. |
| Court: | All right. And, Mr. Jensen, I take it your client's plea is not guilty then? |
| Mr. Jensen: | Yes, Your Honor. |

(State's Lodging A-7, pp. 33-34.) During or after arraignment, Petitioner did not object to the manner or the content of the arraignment.

Petitioner later was granted a re-trial with a different jury on the persistent violator charges. (See State's Lodging A-7, p. 23, *et seq.*)

1. **Procedural Default**

The Idaho Court of Appeals addressed Petitioner's due process argument on the merits. "Herrera has shown no trial prejudice resulting from the court granting leave to file the amended information on the first day of trial, nor can he inasmuch as he was

granted a re-trial on the persistent violator allegation many months later. (State's Lodging B-21, p. 9.) Petitioner sought review of all the claims in his Opening Brief and Reply Brief in his petition for review to the Idaho Supreme Court. (State's Lodging B-24.) Liberally construing the "due process" claim to encompass a federal issue, the Court concludes that Claim 6 is not procedurally defaulted but was addressed on the merits.

### 2.  Statute of Limitations

Claim 6 of the Amended Petition is that the district court violated Petitioner's right to due process by sua sponte permitting the state to file an amended information the morning of trial. (Dkt. 44, p. 16.) In the original Petition, one of the claims is that he was arraigned "without counsel present in magistrate court as well as district court." Claim 6 is different; it focuses on substantive prejudice resulting from the timing of the arraignment on the persistent violator charge, which is not the same as being arraigned without counsel. Therefore, Claim 6 does not relate back to the original Petition's claims and is untimely.

### 3.  Merits

The Court alternatively will deny the claim on the merits. As the Idaho Court of Appeals noted, Petitioner had about three months' notice of the persistent violator charges because the prosecutor had filed it without leave and had sent a copy of his counsel at that time. Petitioner later was granted a re-trial on the persistent violator charges. He has failed to show that any delay in "official" notice of the charges caused him any prejudice, given that he had actual notice three months prior to trial and had a

second trial de novo. This Court concludes that the Idaho Court of Appeals' decision is not contrary to federal due process precedent and fails under both deferential § 2254 review and de novo review. Claim 6 will be denied on the merits and dismissed with prejudice.

### Claim 7/E

Claim 7 is a companion to Claim 6: "The district court violated Petitioner's right to due process by … failing to properly arraign him on the amended information." (Dkt. 44, p. 16.)

1. **Statute of Limitations**

For the reasons set forth directly above, this claim does not relate back to an original claim and is barred by the statute of limitations.

2. **Merits**

The object of arraignment is to inform the accused of the charges against him and obtain an answer from him. *Garland v. Washington*, 232 U.S. 642, 644 (1914). Courts must analyze whether the defendant was prejudiced by the manner in which the defendant was arraigned. No prejudice exists where: (1) the defendant receives a copy of the indictment or information; (2) the defendant has representation; (3) the defendant knows the charges against him and had them read to him in open court; and (4) the defendant acknowledged the charges by pleading not guilty. *United States v. Bey*, 499 F.2d 194, 201 (3d Cir. 1974). Here, Petitioner's arraignment on the persistent violator

**MEMORANDUM DECISION AND ORDER - 48**

enhancement meets all four criteria. He has pointed to nothing in the arraignment process that prejudiced his right to defend at the second persistent violator trial. This claim fails on de novo review and will be denied on the merits and dismissed with prejudice.

**Claims 8/F, 9/G, and 10/H**

Claims 8, 9, and 10 are not at issue and will proceed to briefing on the merits:

> 8/F:  Petitioner's conviction was obtained as a result of prosecutorial misconduct. The prosecutor asked Herrera to verify if the State's witnesses were lying under oath and comment on their credibility. Then, despite knowing Garrett had more than one felony, the state said that Garrett was more credible than Herrera because Garrett had just one felony, where Herrera had three.
>
> 9/F:  The prosecutor committed misconduct when he shifted the burden of proof and told the jury that Herrera had the burden to show reasonable doubt.
>
> 10/A:  Petitioner did not have counsel at his original arraignment, and never had  counsel until his preliminary hearing on June 30, 2006.

**Claim 11/B**

Claim 11 is that trial counsel was ineffective because he never filed a motion to suppress Petitioner's statement to Officer Pethtel, simply accepted the State's version of events, and never investigated whether facts existed to support a suppression motion. (Dkt. 44, p.19.)

1.  **Statute of Limitations**

Claim 11 does not arise out of the same conduct, transaction, or occurrence as the peace officer, prosecutorial misconduct, arraignment, or appellate counsel claims attempted to be set out in the original Petition. Therefore, the claim does not relate back to the original Petition and is barred by the statute of limitations.

**MEMORANDUM DECISION AND ORDER - 50**

2. **Merits**

The clearly-established law governing a Sixth Amendment claim of ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984). The *Strickland* standard requires a petitioner to show that (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness, and that (2) the petitioner was prejudiced by the deficient performance. *Id*. at 684.

In assessing trial counsel's performance under *Strickland*'s first prong, a reviewing court must view counsel's conduct at the time that the challenged act or omission occurred, making an effort to eliminate the distorting lens of hindsight. *Id*. at 689. The court must indulge in the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id*.

In assessing prejudice under *Strickland*'s second prong, a court must find that, under the particular circumstances of the case, there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id*. at 684, 694. A reasonable probability is one sufficient to undermine confidence in the outcome. *Id*. at 694.

A petitioner must establish both deficient performance and prejudice to prove an ineffective assistance of counsel claim. 466 U.S. at 697. On habeas review, the court may consider either prong of the *Strickland* test first, or it may address both prongs, even if one is deficient and will compel denial. *Id.*

**MEMORANDUM DECISION AND ORDER - 51**

The foregoing standard, giving deference to counsel's decisionmaking, is the de novo standard of review. Another layer of deference—to the state court decision—is afforded under AEDPA. In giving guidance to district courts reviewing *Strickland* claims on habeas corpus review, the United States Supreme Court explained:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." *Williams*, *supra*, at 410, 120 S.Ct. 1495. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Harrington v. Richter*, 562 U.S. 86, 112 (2011).

The Idaho Court of Appeals decided this claim on the merits on post-conviction review. It found there was a "genuine issue of material fact" as to whether Petitioner was in custody, given Petitioner's allegation that he was handcuffed while being questioned about the incident. The Court of Appeals therefore focused on the prejudice prong of the *Strickland* test:

> [E]ven if a motion to suppress would have prevented Deputy Pethel from testifying about Herrera's statements, this decision would not have limited the testimony of the other witnesses or impacted the State's ability to charge Herrera with the felony offense. In fact, the record indicates that another witness testified to Herrera's animosity toward the victim, establishing the same motivation for the attack to

**MEMORANDUM DECISION AND ORDER - 52**

> which Deputy Pethel testified. Thus, the district court did not
> err in concluding that Herrera failed to allege sufficient
> evidence to show a reasonable probability that the result of
> the trial would have been different. Therefore, the district
> court did not err in summarily dismissing this claim.

(State's Lodging D-17, p. 9.) Because this claim was denied on the merits, it is subject to

deferential review.

The Idaho Court of Appeals relied on *Howes v. Field*, 565 U.S. 499 (2012), which

discussed *Miranda* warnings in prison settings. *Miranda* warnings—advising suspects of

their constitutional rights, including the right to remain silent—must precede any

"custodial interrogation." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). A "custodial

interrogation" occurs whenever law enforcement officers question a person who has been

taken into custody or who has been significantly deprived of their freedom of action.

*Miranda*, 384 U.S. at 444. General "on-the-scene questioning" concerning the facts and

circumstances surrounding a crime or other general questioning of people during a fact-

finding process do not trigger *Miranda* warnings. *Miranda,* 384 U.S. at 477–78.

In *Mathis v. United States*, 391 U.S. 1, 4 (1968), the United States Supreme Court

extended *Miranda* safeguards to inmates in a prison setting. In *Howes v. Fields*, 565 U.S.

499 (2012), the Supreme Court explained:

> [I]t is abundantly clear that our precedents do not clearly
> establish the categorical rule ... that the questioning of a
> prisoner is always custodial when the prisoner is removed
> from the general prison population and questioned about
> events that occurred outside the prison. On the contrary, we
> have repeatedly declined to adopt any categorical rule with

**MEMORANDUM DECISION AND ORDER - 53**

> respect to whether the questioning of a prison inmate is custodial.

*Id*. at 505.

Because Claim 11 was decided on the merits, the Idaho Court of Appeals' ruling is entitled to deferential review. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The state court decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.

This Court first notes that corroboration of evidence is an important factor in criminal cases. Two disinterested witnesses—Detective Pethel and Inmate Galow testified that Petitioner told them facts that supported the element of the crime that Petitioner acted *because of* Garrett's involvement in Petitioner's prior criminal case. If the jury had doubts about the veracity of the inmate witness, it had Detective Pethel, a government official, as corroboration.

However, if Detective Pethel's testimony is removed from the mix, other significant corroborating evidence was presented to the jury. Petitioner himself acknowledged that he knew Garrett was the government official who transferred him between jail and the courthouse, that Garrett had been the bailiff at his trial, and that Garrett's name and signature appeared on the charging documents for the crime.

MEMORANDUM DECISION AND ORDER - 54

Petitioner, indeed, had been sentenced to five years, which is the exact figure that Galow

testified that Petitioner mentioned on the day of the incident.

In addition, Petitioner's testimony at trial was especially weak, because his

language was both equivocal and unnatural:

> I told [Garrett] if he would do me a favor and please
> don't be touching my things, you know: It's not a hard think
> to do, if you would, please. And I did stipulate: Please don't
> grab my coffee and move it around anymore.
>
>     *   *   *
>
> I think he took it  as – I don't know how, but he got up,
> just stood straight up and said: I didn't touch your coffee.
> And he just blew up in an explosive manner that surprised me
> and he started saying that: I'm tired of you calling me a rat
> cop—a rat cop, or something to that nature. For me it's foggy
> for the simple fact that I didn't know what he was talking
> about.
>
>     *   *   *
>
> And I said: If you want my coffee that bad you don't
> have to try to take it. And he was standing up approximately
> from me to you.
>
> I just threw it at him, but not towards his face or
> anything, just the bottom of the torso area. And's he's still a
> young man and he's quite agile and he dodged it and I grazed
> a little bit of his leg, or something like that.

(State's Lodging A-7. pp. 153-56.)

The Court concludes that Petitioner has not shown that the Idaho Court of Appeals

decision that use of Detective Pethtel's testimony of Petitioner's admissions was not

prejudicial was erroneous, and, even if it was, that the error was well understood and

comprehended in existing law beyond any possibility for fairminded disagreement, as

**MEMORANDUM DECISION AND ORDER - 55**

required by *Harrington*. There was sufficient corroborating evidence in the record to support Petitioner's conviction because the inmate witness's testimony matched the victim's testimony, and Petitioner's testimony was not believable. This claim fails under deferential review and will be denied on the merits and dismissed with prejudice.

### Claim 12/B

Claim 12 is that trial counsel was ineffective because he did not "challenge the [arrest] warrant on the violation of" his "Fourth, Fifth, Sixth, and Fourteenth [Amendment]" rights (Dkt. 44, p. 19.) In the Amended Petition, this claim is presented in the same section as Claim 11, the *Miranda* question in the Pethtel interview. Therefore, the Court construes the claim as arising from the statement Petitioner gave Pethtel.

#### 1. **Statute of Limitations**

This claims does not arise out of the same conduct, transaction, or occurrence as the peace officer, prosecutorial misconduct, arraignment, or appellate counsel claims attempted to be set out in the original Petition. Therefore, it does not relate back to the original Petition and was filed beyond the statute of limitations period.

#### 2. **Merits**

For the reasons set forth as to Claim 11, Claim 12 also fails on the merits under the deferential review standard and will be denied with prejudice and dismissed.

### Claim 13/C

Claim 13 is that trial counsel was ineffective because he failed "to move for a timely continuance" (Dkt. 44, p. 20); This claim is the same as Claim 5, with an

**MEMORANDUM DECISION AND ORDER - 56**

ineffective assistance overlay. For the reasons state above in the discussion of Claim 5, Petitioner's claim is denied on statute of limitations grounds and alternatively on the merits, for failure to show deficient performance or prejudice.

### Claim 14/D

Claim 14 is a "discovery claim," alleging trial counsel was ineffective because he failed "to file any pretrial motions on defensive issues[, failed] to seek trial discovery[, and failed] to obtain a transcript of testimony from [the] preliminary hearing and present it to [the] jury" (Dkt. 44, p. 21).

### 1. Statute of Limitations

This claim does not arise out of the same conduct, transaction, or occurrence as the peace officer, prosecutorial misconduct, arraignment, or appellate counsel claims attempted to be set out in the original Petition. Therefore, it does not relate back to the original Petition and was filed beyond the statute of limitations period.

### 2. Merits

Even assuming that Petitioner's trial counsel performed deficiently by these failures, Petitioner has not shown that other evidence existed that would have changed the outcome of the trial, or that other motions would have been successful. Claim 14 fails for lack of prejudice. It will be denied on the merits and dismissed with prejudice.

**Claim 15/E**

Claim 15 is a "*Miranda* warning claim," appearing to allege a stand-alone claim that Herrera's "Fifth Amendment[] privilege against self-incrimination" was violated. (*Id*.)  This issue has been addressed above in the discussion of Claim 11.

*Miranda* errors are subject to the harmless error rule, which is similar to the prejudice prong of the *Strickland* test. *See Brecht v. Abrahamson*, 507 U.S. at 639. Under *Brecht*, the habeas petitioner is not entitled to relief unless the trial error resulted in actual prejudice. Habeas relief should be granted if the admission of statements in violation of *Miranda* " had a substantial and injurious effect or influence in determining the jury's verdict.'" *Jackson v. Giurbino*, 364 F.3d 1002, 1009 (9th Cir.2004). Because there was sufficient corroborating evidence and because Petitioner's testimony was weak, the Court concludes that inclusion of Petitioner's statement through Deputy Pethtel's testimony did not have a substantial and injurious influence on the jury's verdict. Therefore, this claim fails under the deferential review standard and will be denied and dismissed with prejudice.

**Claim 16/F**

Claim 16 is an ineffective assistance claim, based on "suppression of evidence, etc.," alleging trial counsel "never file[d] a motion to suppress[] witness statement[s]." Claim 16 also asserts that counsel was ineffective for failing to file a motion to suppress his statement to the police. (*Id*.)

**MEMORANDUM DECISION AND ORDER - 58**

1.  **Statute of Limitations**

Claim 16 does not arise out of the same conduct, transaction, or occurrence as the peace officer, prosecutorial misconduct, arraignment, or appellate counsel claims attempted to be set out in the original Petition. Therefore, it does not relate back to the original Petition and was filed beyond the statute of limitations period.

2.  **Merits**

The merits of the claim based on Petitioner's own statement to Officer Pethel is discussed, denied, and dismissed above in the discussions of Claims 11 and 15. It fails for the same reason here.

Petitioner has provided no facts showing that a motion to suppress any other witness statements would have been successful. Therefore, Claim 16 will be denied on the merits under the de novo standard of review and dismissed with prejudice.

**Claim 17/G**

Claim 17 is that trial counsel was ineffective for failing to move for a change of venue. (Dkt. 44, p. 22.) Petitioner argues that a change was warranted because every judge knew the victim; the prosecutor had "worked hand in hand" with the victim when the victim was a bailiff in the same court; everyone who worked in the courthouse knew the victim; all the police knew him; and "it was a stacked deck." (*Id*.) Counsel should have moved the Court to "have a jury pulled from a couple count[ies] away," Petitioner argues. *Id*.

1. **Statute of Limitations**

This claim does not arise out of the same conduct, transaction, or occurrence as the peace officer, prosecutorial misconduct, arraignment, or appellate counsel claims attempted to be set out in the original Petition. Therefore, it does not relate back to the original Petition and was filed beyond the statute of limitations period.

2. **Merits**

The Idaho Court of Appeals addressed this claim on the merits. (State's Lodging D-17, p. 11.)

> The decision to grant or deny a motion to change venue is within the discretion of the judge. *State v. Hadden*, 152 Idaho 371, 376, 271 P.3d 1227, 1232 (Ct. App. 2012). The court shall grant such motion "if the court is satisfied that a fair and impartial trial cannot be had in the county where the case is pending." I.C.R. 21(a). In post-conviction proceedings, "the issue of whether a change of venue should be requested is a matter of trial strategy and tactical choice, not subject to review as a claim of ineffective assistance of counsel in the absence of proof of inadequate preparation or ignorance on counsel's party." *Grant v. State*, 156 Idaho 598, 606, 329 P.3d 380, 388 (Ct. App. 2014). In *Grant*, the appellant claimed counsel was ineffective for failing to move for a change of venue because "the victim's mother 'was the secretary of the local police chief' and because of 'how close-knit the law enforcement community is.'" *Id*. However, this Court held that the petitioner in *Grant* failed to show prejudice from the alleged community connection as well as the likelihood of success on such a motion. *Id*.
>
> Similar to *Grant*, Herrera has not alleged sufficient evidence to establish prejudice from the alleged connection between the victim and the legal proceeding. Additionally, Herrera has not alleged facts sufficient to show a likelihood of success if counsel had filed the motion on his behalf. Thus,

> the district court did not err in summarily dismissing this
> claim.

(*Id*., pp. 11-12.) In *Grant*, the Idaho Court of Appeals also specifically found that Grant's

allegations were "conclusory and inconsequential," with "nothing in the record to

establish a basis for a change of venue, even if Grant's attorney made such a request."

329 P.3d at 388-89.

As for federal law governing change of venue claims, in *Dobbert v. Florida*, 432

U.S. 282 (1977), a case in which a father was charged with murdering two of his children

and torturing and abusing his two remaining children, the Supreme Court explained the

change of venue standard as follows:

> Under *Murphy [v. Florida*, 421 U.S. 794 (1975),] extensive
> knowledge in the community of either the crimes or the
> putative criminal is not sufficient by itself to render a trial
> constitutionally unfair. Petitioner in this case has simply
> shown that the community was made well aware of the
> charges against him and asks us on that basis to presume
> unfairness of constitutional magnitude at his trial. This we
> will not do in the absence of a "trial atmosphere . . . utterly
> corrupted by press coverage," *Murphy v. Florida, supra*, 421
> U.S., at 798, 95 S.Ct., at 2035.

*Id*., p. 303.

Petitioner has pointed to nothing in the voir dire transcript and nothing in the

remainder of the record showing that any juror who was selected to be on the jury had a

bias in favor of the victim because of his former officer or bailiff status (or for any other

reason).

**MEMORANDUM DECISION AND ORDER - 61**

Rather, Petitioner focuses more on the fact that the court and court personnel may have worked with Garrett, causing them to be sympathetic toward the prosecution. Where a motion to change venue is based on the court's potential bias, the reviewing court should consider the motion under recusal standards. As a matter of due process, a judge must recuse himself when he "has a direct, personal, substantial, pecuniary interest in a case," or when "the probability of actual bias ... is too high to be constitutionally tolerable." *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 876–77 (2009) (relying on *Tumey v. Ohio*, 273 U.S. 510, 523 (1927)).

This Court agrees with the Idaho Court of Appeals that Petitioner's arguments in support of the change of venue claim are "conclusory and inconsequential," with nothing in the record to establish a basis for a change of venue, even if Petitioner's attorney had made such a request. Petitioner has not shown that the trial court was biased in favor of the victim simply because the victim used to be a bailiff, and now, because of commission of a crime, was now a jail inmate himself. Petitioner's counsel brought a motion for disqualification based on this ground, and the trial court denied it, stating that he did not recall having worked with Garrett before. The court declined to recuse itself, based on the following:

> On the motion to disqualify, I don't remember the victim in this case—the alleged victim. Surely, I've met him because I hear cases here occasionally. The bailiffs that I recall here in Cassia County are Shawn, who's here this morning, and Spot. I know Spot, and I don't know his real name even. I assume he's not the victim in this case.

**MEMORANDUM DECISION AND ORDER - 62**

> So, you know, I think to start with, the defendant's mistaken about the relationship I may have had with the victim in this case, because I just don't recall him. I might recognize him when I go out there and see him, but surely there was no relationship that should give rise to any concern here.

(State's Lodging A-7, p. 30.) The court also reviewed Criminal Rule 25(b), regarding disqualification in criminal cases, and found that none of the criteria applied.

This Court concludes that Petitioner has not provided facts to show that the trial judge should have recused himself. The trial judge only "occasionally" held trial in Cassia County, and he was able to name the bailiffs he actually knew, none of which was Garrett. Petitioner has not shown that the trial judge had a direct, personal, substantial, and/or pecuniary interest in the case. Nor has Petitioner shown that any of the other players in the litigation (for example, prosecutors or court personnel) who knew and worked with the victim when he was a bailiff) acted in a biased manner such that it prejudiced Petitioner's case. Because the record is devoid of any facts supporting this claim, it fails under both deferential and de novo review and will be denied and dismissed with prejudice.

Claim 18/H

Claim 18 is that trial counsel's "overall performance" was ineffective, including a "failure to prepare for trial," "properly cross-examine state witnesses, impeach state witnesses with inconsistent prior statements," and "call corroborating witnesses to support Petitioner's testimony," all of which deprived petitioner of a fair trial. (Dkt. 44, p. 22.)

**MEMORANDUM DECISION AND ORDER - 63**

1. **Statute of Limitations**

This claim does not arise out of the same conduct, transaction, or occurrence as the peace officer, prosecutorial misconduct, arraignment, or appellate counsel claims attempted to be set out in the original Petition. Therefore, it does not relate back to the original Petition and was filed beyond the statute of limitations period.

2. **Merits**

The Idaho Court of Appeals decided this claim on the merits. (State's Lodging D-17, p. 12.) The Court of Appeals noted that the "district court dismissed this claim as bare and conclusory because Petitioner did not allege sufficient facts to show that counsel's conduct was not a strategic decision or that a change in conduct would have impacted the outcome of the jury trial." (*Id.*) Therefore, the appellate court concluded, Petitioner failed to show prejudice, even if counsel performed deficiently. (*Id.*)

Petitioner asserts that his counsel knew that there were about 15 other inmates present at the time of the fight, and counsel did not attempt to interview any of them. However, Petitioner testified at trial that, at the time of the incident "[e]verybody had left except for two people, which was [sic] inmate Galow and inmate Garrett." (State's Lodging A-7, p. 153.)

Even assuming that this failure was deficient performance, however, Petitioner has not produced a declaration from any other witness who saw the altercation and who could corroborate Petitioner's version of events. Petitioner has had almost a decade to produce the statement of another witness but has not done so.

Petitioner has also produced trial counsel Kent Jensen's billing statements, likely for the purpose of showing that Jensen performed only about 30 total hours of pretrial and trial work on the case. Again, even assuming that Jensen's work was deficient, Petitioner has not shown in particular what more trial counsel should have done that would have made a difference in the outcome of the case. (*See* Exhibit H-3, Dkt. 69-4, pp. 19-32.) Even if the peace officer certification issue would have been discovered before trial, it would not have made a difference, because, as a matter of law, Garrett was POST certified at the time Petitioner encountered him.

The Court concludes that Claim 18 fails for lack of a showing of prejudice under either the deferential or de novo standard of review. It will be denied on the merits and dismissed with prejudice.

### **Claim 19/I**

Claim 19 is that trial counsel was ineffective for failing to protect Petitioner's speedy trial rights under the Due Process Clause. (Dkt. 44, p. 23.) Petitioner asserts that, because he went to trial 197 days after he was first arraigned, his speedy trial rights were violated. (*Id*.) Idaho's trial statute, Idaho Code § 19-3501(2) requires a defendant to be tried within six months of the information filing. See I.C. § 19-3501(3). That statute alternatively requires a defendant to be tried within six months of arraignment if an indictment was filed. In Petitioner's case, an information, not an indictment, was filed. And, as explained below, the federal constitutional standard is not the same as the state statutory standard of law.

**MEMORANDUM DECISION AND ORDER - 65**

1. **Statute of Limitations**

This claim does not arise out of the same conduct, transaction, or occurrence as the

peace officer, prosecutorial misconduct, arraignment, or appellate counsel claims

attempted to be set out in the original Petition. Therefore, it does not relate back to the

original Petition and was filed beyond the statute of limitations period.

2. **Merits**

It does not appear that the Idaho appellate courts decided this claim. Therefore,

this Court reviews it de novo. Petitioner points to Exhibits A, B, AA, and I to support his

claim. Exhibit I has no content and refers only to Exhibits A, B, and AA. Exhibit B

shows that a criminal complaint charging Petitioner with aggravated battery pursuant to

I.C. §§ 18-903 and 18-907(a) was filed on June 6, 2006. (State's Lodging A-1, pp. 1-2),

and that the magistrate judge issued a warrant on June 20, 2006. (Dkt. 69-2, p. 13-14.)

Exhibit A shows his first appearance was on June 20, 2006. (Dkt. 69-2, p. 1.)

 An amended criminal complaint was filed on July 5, 2006, adding a charge of

battery on a peace officer pursuant to I.C. §§ 18-915(c) (which is an inapplicable section,

because the victim must "engaged in the performance of his duties") and 18-903, a

felony. (*Id.*, pp. 29-30.) An information changing the I.C. § 18-915(c) citation to (d) was

filed on July 19, 2006. (*Id.*, pp. 35-36.)

As discussed above, on December 18, 2006, Petitioner asked for a continuance to

accommodate his attorney's calendar, but the judge denied the continuance to meet the

speedy trial deadline. The trial court discussed the speedy trial with counsel and

Petitioner:

> I think there was a need to set that pretty quickly because of a speedy trial issue. I know that January 3 would have been within 6 months, but I'm looking for the original information here. I don't know how much room we've got to change that without a waiver of speedy trial.

(State's Lodging A-7, p. 20.) The trial court ended the hearing saying, "Either the other

case settles, or Mr. Herrera waives his speedy trial or we'll get it set sometime before

January 17th." (*Id.*, p. 21.)

Petitioner's trial began on January 3, 2007. Six months from the amended

information charging him under the correct statutory provision that was filed on July 19,

2006, is January 19, 2007.

The right to a speedy trial is a "fundamental right protected by the Fourteenth

Amendment Due Process Clause." *Kloper v. North Carolina*, 386 U.S. 213 (1967). Idaho

courts determine whether a defendant's constitutional right to a speedy trial was violated

under both the United States and Idaho Constitutions by using the balancing test set forth

in *Barker v. Wingo*, 407 U.S. 514 (1972), considering the following factors: (1) the length

of the delay; (2) the reason for the delay; (3) the defendant's assertion of his or her right

to a speedy trial; and (4) the prejudice occasioned by the delay. *Id.* at 530. Stated another

way, to prevail on a speedy trial claim, a petitioner must show that he "suffered actual,

non-speculative prejudice" and that the length of the delay, when balanced against the

prosecution's reasons for the delay, "offends ... fundamental conceptions of justice."

**MEMORANDUM DECISION AND ORDER - 67**

*United States v. Sherlock*, 962 F.2d 1349, 1353-54 (9th Cir. 1992) (relying on *U.S. v. Lovasco*, 431 U.S. 783, 789-90 (1977)). The law is clear that there is no speedy trial violation where the accused himself causes or seeks the delay. *See Vermont v. Brillon*, 556 U.S. 81, 92-95 (2009).

In *State of Idaho v. Davis*, 118 P.2d 160 (Idaho Ct. App. 2005), the court explained:

> Idaho courts have recognized that the state guarantee is not necessarily identical to the federal guarantee. *See State v. Hobson*, 99 Idaho 200, 201, 579 P.2d 697, 698 (1978); *State v. Mason*, 111 Idaho 660, 663, 726 P.2d 772, 775 (Ct.App.1986). The Idaho Supreme Court indicated:
>
> > Under the Sixth Amendment, the period of delay is measured from the date there is "a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge." *United States v. Marion*, 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468, 479 (1971). Under the Idaho Constitution, the period of delay is measured from the date formal charges are filed or the defendant is arrested, whichever occurs first.
>
> *Young,* 136 Idaho at 117, 29 P.3d at 953.

*Id*. at 836. The *Davis* court also explained that the six-month "speedy trial" requirement in the Idaho Code was a different standard from both the Idaho Constitution's speedy trial provision and the federal Constitution's provision. *Id*.; see I.C. § 19-3501.

As discussed above, in December 2006, Petitioner sought a continuance of the trial, but the trial court would not permit it unless Petitioner waived his speedy trial right. At that time, the trial court said that the trial must be held before January 17, 2007, within

six months of the corrected information. Petitioner did not object and assert his right to have a speedy trial on an even earlier date within six months of his arrest; instead, Petitioner sought a continuance without regard to when the continued trial would be held.

The trial court denied the motion for a continuance and Petitioner's trial was held within six months of the amended information charging him with the felony crime set forth in the information. To the extent that Petitioner argues that the speedy trial date should have been calculated from the first criminal complaint that was filed on June 4, 2006, Petitioner has not shown any prejudice that occurred as a result. A one-month delay was not substantial. Petitioner did not assert that his speedy trial right would be violated by the court's suggestion of a January 4 start date; in fact, Petitioner was asking for a delay to accommodate defense counsel's schedule. The reason for the delay was the amendment of the charge from I.C. § 18-915(c) to (d), which is a factor charged against the State, but, the trial court and the parties agreed—by virtue of the fact that no speedy trial objection was raised—that the January 4 date was acceptable. Therefore, Petitioner has not shown that the federal standard for a speedy trial was violated in his case because the majority of the *Barko v. Wingo* factors weigh against him. This claim fails on the merits under the de novo standard of review and will be denied and dismissed with prejudice.

### Claim 20/J

Claim 20 is that trial counsel was ineffective for failing "to go to the scene of the crime and locate potential witnesses," and for "related ineffectiveness." (Dkt. 44, p. 23.)

**MEMORANDUM DECISION AND ORDER - 69**

1. **Statute of Limitations**

This claim does not arise out of the same conduct, transaction, or occurrence as the peace officer, prosecutorial misconduct, arraignment, or appellate counsel claims attempted to be set out in the original Petition. Therefore, it does not relate back to the original Petition and was filed beyond the statute of limitations period.

2. **Merits**

Petitioner cites to exhibits J, J-1, and AA to support his claim. Exhibits J and J-1 are copies of the Index to the trial, showing that Petitioner's counsel did not call any witnesses on behalf of Petitioner. (Dkt. 69-4, pp. 49-50.) However, Petitioner testified at trial that there were only two other inmates left in the dining area when the altercation occurred—Garrett and Galow. Petitioner has never come forward with affidavits of other witnesses who would have been available at trial to give testimony favorable to Petitioner. He cannot merely speculate that such testimony exists. This claim fails on the merits under de novo review for failure to show prejudice.

### Claim 21/K

Claim 21 is that trial counsel was ineffective because he filed only one pretrial motion, which was a motion to dismiss that "was filed late and [improperly] put together" (Dkt. 44, p. 23.) Trial counsel also failed to oppose in writing the State's late and incorrect amended information, and the State's act of "fraudulently put[ting] together evidence to establish a charge to bring petitioner to trial." (*Id*., p. 24.) This claim also

contains *Miranda* issues regarding the Detective Pethtel interview, which are discussed elsewhere and will not be addressed here.

### 3. **Statute of Limitations**

This claim does not arise out of the same conduct, transaction, or occurrence as the peace officer, prosecutorial misconduct, arraignment, or appellate counsel claims attempted to be set out in the original Petition. Therefore, it does not relate back to the original Petition and was filed beyond the statute of limitations period.

### 4. **Merits**

Petitioner has not identified which pretrial motions his counsel should have filed that would have made a difference in the outcome of the trial.

Petitioner and his counsel had about three months of advance notice that the amended information contained a persistent violator enhancement and that the State had failed to file a motion seeking leave to amend. Had counsel moved to dismiss the amended information when he received it, the likely outcome would have been that the State would have been given leave to file a motion in support of the amended complaint, the motion would have been granted, and he would have been arraigned three months before trial. Petitioner's argument that he had insufficient time to prepare would have been moot, because he would have had even more time to prepare. An overriding factor in this analysis is that Petitioner has not shown that the late amendment prejudiced him, because he was granted a retrial on the persistent violator charge, and so had even more time to prepare.

**MEMORANDUM DECISION AND ORDER - 71**

Petitioner has not shown that any other pretrial motion would have been successful. Based on the record before the Court, there was no prejudice caused by any alleged deficiency of counsel. Therefore, the claim fails on de novo review.

**Claim 22/L**

Claim 22 is that trial counsel was ineffective because he failed "to request a lesser included misdemeanor offense jury instruction based on battery of a certain person" (Dkt. 44, p. 24; see State's Lodging A-7, pp. 176-80 (jury instruction conference).

1. **Statute of Limitations**

This claim does not arise out of the same conduct, transaction, or occurrence as the peace officer, prosecutorial misconduct, arraignment, or appellate counsel claims attempted to be set out in the original Petition. Therefore, it does not relate back to the original Petition and was filed beyond the statute of limitations period.

2. **Merits**

Petitioner cites to Exhibits L and L-1 in support of this claim, which are the jury instruction drafts on battery submitted by Petitioner's counsel but not specifically used by the court because the content of the proposed instruction was "covered by instruction 25." (Dkt 69-4, p. 65.)

The Court's review of the actual jury instructions shows that a "lesser included offense" was unnecessary. The first question the jurors had to answer was whether Petitioner committed a battery upon Garrett. If the jury found that the elements of a battery were not met, then they were instructed to find Petitioner not guilty of battery.

**MEMORANDUM DECISION AND ORDER - 72**

(State's Lodging A-7, p. 189.) However, if the jury found that Petitioner had committed a battery, then they moved to the next question, which was whether Alan Garrett was a peace officer. If they answered that affirmatively, then the jurors determined whether the battery was committed "because of Alan Garrett's former status as a peace officer." (*Id.*) The three-tiered instructions, No. 14, and 15, and the jury verdict form, No. 25, are the equivalent of a lesser included offense instruction that Petitioner wanted; that is, Petitioner could have been found not guilty of simple misdemeanor battery on a person or felony battery on a peace officer. *See id.*, at pp. 197-98. Therefore, Petitioner's claim is without a factual basis and fails under de novo review. It will be denied and dismissed with prejudice.

### Claim 23/M

Claim 23 is that trial counsel was ineffective because he failed "to object to improper cross-examination" by the prosecutor. (*Id.*, p. 25.) This claim is related to Claim 8, the prosecutorial misconduct claim, but Petitioner did not present an ineffective assistance overlay in the original Petition. However under *Nguyen v. Curry*, 736 F.3d at 1296–97, the Court concludes that this claim relates back to the prosecutorial misconduct claim. Petitioner will be permitted to proceed to the merits of this claim.

### Claim 24/N

Claim 24 is that trial counsel was ineffective because he failed to object to the admission of evidence seized based on a warrant that was obtained under an insufficient affidavit. (Dkt. 44, p. 25.)

**MEMORANDUM DECISION AND ORDER - 73**

1. **Statute of Limitations**

This claim does not arise out of the same conduct, transaction, or occurrence as the peace officer, prosecutorial misconduct, arraignment, or appellate counsel claims attempted to be set out in the original Petition. Therefore, it does not relate back to the original Petition and was filed beyond the statute of limitations period.

2. **Merits**

Petitioner cites to Exhibits N, B, and B-1 in support of his claim that trial counsel failed to object to the admission of evidence seized based on a warrant that was obtained under an insufficient affidavit. Exhibit B is the criminal complaint, and B-1 is the affidavit supporting the complaint. Petitioner does not state why the affidavit was insufficient or what evidence was improperly seized. The affidavit is consistent with the testimony of witnesses Pethtel and Galow at trial. (Dkt. 69-2, pp. 17-18.) Exhibit N is merely a statement that says, "Refer to Exhibit B and B-1."

This claim fails for lack of a showing of deficient performance or prejudice. It will be denied on the merits and dismissed with prejudice.

### Claim 25/O

Claim 25 is that trial counsel was ineffective because he failed "to object to the prosecutor's allusion in closing argument to Herrera's propensity to commit battery." (Dkt. 44, p. 25.) The prosecutor stated: "[I]f Mr. Jensen wants to look at people's pasts, you've got a victim with one felony conviction and a defendant with three. Who's more or less credible?" (State's Lodging A-7, p. 211.)

**MEMORANDUM DECISION AND ORDER - 74**

3.  **Statute of Limitations**

This claim is based on different facts than the prosecutorial misconduct claim in the original Petition, which is that the prosecutor placed the burden of proof on Petitioner during closing argument. Therefore, Claim 25 does not relate back and is untimely.

4.  **Merits**

"As a general rule, a prosecutor may not express his opinion of the defendant's guilt or his belief in the credibility of government witnesses." *United States v. Molina*, 934 F.2d 1440, 1444 (9th Cir. 1991). "Whether the witnesses have testified truthfully ... is entirely for the jury to determine; it is improper to communicate that a credibility determination has been made by the [prosecutor], law enforcement agents, or the court, or that the government knows whether the witness is being truthful and stands behind the veracity of the witness's testimony." *United States v. Ortiz*, 362 F.3d 1274, 1279 (9th Cir. 2004).

In this instance, the prosecutor *asked the jury* to make a credibility determination. The prosecutor did not vouch for the credibility of Garrett. There was no deficient performance and no prejudice as a result of defense counsel's failure to object. This claim fails on de novo review and will be denied and dismissed with prejudice.

**<u>Claim 26/P</u>**

Claim 26 is that trial counsel was ineffective because he failed to "object to improper comments and prejudicial remarks made by" the trial court. (Dkt. 44, p. 26.) This claim appears to arise from the following colloquy at trial:

**MEMORANDUM DECISION AND ORDER - 75**

| | |
|---|---|
| Prosecutor: | If the defendant has shown any reasonable doubt it's your duty to convict, and that's what I'm asking you to do. |
| Defense counsel: | Your Honor, I'm going to object to that last statement. The defendant has no burden to show any reasonable doubt. |
| The Court: | Well, that's in the nature of argument and you can certainly argue that if you wish. So, you may proceed [with your closing argument], Mr. Jensen. |

(Dkt. 69-4, p. 84.)

Claim 26 is related to the prosecutorial misconduct claim and arises from the same "shifting of the burden of proof" set of facts. Therefore, the claim relates back. The Court will permit Plaintiff to proceed to the merits of this claim.

### Claim 27/Q

Claim 27 is a "due process violation" claim, alleging the trial was fundamentally unfair on account of "blatantly incompetent counsel" (Dkt. 44, p. 26.)

1. **Statute of Limitations**

This claim does not arise out of the same conduct, transaction, or occurrence as the peace officer, prosecutorial misconduct, arraignment, or appellate counsel claims attempted to be set out in the original Petition. Therefore, it does not relate back to the original Petition and was filed beyond the statute of limitations period.

**MEMORANDUM DECISION AND ORDER - 76**

2.  **Merits**

Petitioner has not set forth facts to support this claim but cites to Exhibits Q to Q-29. These exhibits include the following: the two informations filed in his case, including the amended information detailing Petitioner's felony crimes that supported the persistent violator charge; the jury instructions; a post-trial discussion by the court and counsel about defense counsel having filed a motion to dismiss part two of the amended information and a motion to disqualify the judge on the first day of trial; the trial transcript showing that the court denied the motion to disqualify because the court did not recall having any relationship with Garrett; a notice of termination of employment for Garrett, dated 5/15/01; Garrett's testimony from trial that he had mixed feelings about the prosecution of Petitioner; counsel's apology to the court for bringing the late motion to dismiss and statement that it was Petitioner who brought the lack of an arraignment on the persistent violator enhancement to counsel's attention; a court and counsel discussion about removing the "unlawful touching" language from the jury instructions to avoid confusing the jury, because the court did not want the jury to be able to find Petitioner guilty of battery simply for unlawful touching; and a discussion about the fact that defense counsel stipulated to admission of the past judgments for the persistent violator portion of the trial, with the prosecutor remarking that he wanted to make sure that the Defendant was aware that by making an admission and that he was giving up his right to confrontation, cross-examination, and other rights associated with having a jury decide that he had, in fact, committed the three felonies.

**MEMORANDUM DECISION AND ORDER - 77**

None of these exhibits alone shows that counsel was "blatantly incompetent." Taken together, they do not show that counsel was "blatantly incompetent." The entire record in this matter shows that counsel performed adequately. The late arraignment issue and the admission that Petitioner committed the three felonies were remedied when the Court held a new persistent violator trial and a new sentencing hearing. This claim fails on the merits on de novo review and will be denied and dismissed with prejudice.

### Claim 28 /R

Claim 28 is that trial counsel was ineffective because he failed "to impeach prosecution witnesses with prior inconsistent statements, to do basic legal research, to review the testimony of key witnesses, including his own client," to familiarize himself "with readily available documents necessary to understanding" the case, and to "impeach prosecution witnesses with conflicting statements" (Dkt. 44, p. 26.)

1. **Statute of Limitations**

This claim does not arise out of the same conduct, transaction, or occurrence as the peace officer, prosecutorial misconduct, arraignment, or appellate counsel claims attempted to be set out in the original Petition. Therefore, it does not relate back to the original Petition and was filed beyond the statute of limitations period.

2. **Merits**

Petitioner points to Exhibits R to R-27 to support this claim. Some of these exhibits are portions of the trial transcript from which he desires the Court to extrapolate alleged deficiencies of Petitioner's counsel.

**MEMORANDUM DECISION AND ORDER - 78**

Garrett testified at trial that, at the time he wrote the incident statement for jail staff, he wasn't thinking about pressing charges. (State's Lodging A-7, p. 58.) Contrarily, the written statement says that he wanted to press charges. Counsel pointed out the discrepancy in cross examination. (*Id.*, p. 71.)

At the preliminary hearing, Garrett testified that Petitioner called him a narc cop and a son of a bitch and also said that Garrett had cost him five years of his life. (State's Lodging A-5, p. 5.) At trial, Garrett testified only that Petitioner called him a "narc cop or something" and did not mention the "five years of his life" remark. (State's Lodging A-7, p. 54.). In his written incident statement, Garrett did not say anything about Petitioner calling him a "narc cop or whatever." (*Id.*, p. 57-58.)

To avoid cross-examination of Garrett on the discrepancies, on Garrett's direct examination the prosecutor went over the fact that Garrett's written statement was different from his trial testimony; therefore, defense counsel was not required to make that point again on cross-examination. Defense counsel could have cross-examined Garrett on the discrepancy between the preliminary hearing and the trial testimony, but that likely would have been detrimental to Petitioner's defense, as it would have given Garrett a chance to say that he remembered more about the incident at the preliminary hearing than at the trial, and that Petitioner, indeed, had said that Garrett cost him five years of his life.

In his written statement, Witness Roger Galow said that Petitioner told him that Garrett made him go to prison for five years. At trial, Galow testified that Petitioner said

**MEMORANDUM DECISION AND ORDER - 79**

"something about it costing him five years or something." (State's Lodging A-7, p. 99.) Petitioner does not state how his counsel could have cross-examined Galow better.

Another cross-examination issue Petitioner raises is whether Deputy Pethtel spoke to Galow or merely read his written statement during the investigation. At the preliminary hearing, Pethtel said he never spoke to Galow. (State's Lodging A-5, p. 23.) Consistent with Pethtel's statement, at trial Galow said Pethtel never spoke to him. (State's Lodging A-7, p. 105.) The prosecutor cleared up the issue by saying that, even though the report said, "Roger stated, Roger stated, I think you can infer from that either that he got it from a written statement or that they talked." (*Id*.) This issue reveals no good cross-examination material.

In its review of Petitioner's exhibits and the preliminary hearing and trial transcripts, the Court does not find that Petitioner's counsel missed any significant opportunities to cross-examine witnesses. Petitioner does not provide the specifics to support his claims that trial counsel failed to do basic legal research, to review testimony of key witnesses, or to familiarize himself with necessary documents. Petitioner has failed to show deficient performance or prejudice to the defense.  This claim will be denied on the merits under the de novo review standard and will be dismissed with prejudice.

**Claim 29/S**

Claim 29 is that trial counsel was ineffective because he failed "to object to highly inflammatory inadmissible evidence" and failed to "request a limiting instruction." (Dkt. 44, p. 27.)

### 1. **Statute of Limitations**

This claim does not arise out of the same conduct, transaction, or occurrence as the peace officer, prosecutorial misconduct, arraignment, or appellate counsel claims attempted to be set out in the original Petition. Therefore, it does not relate back to the original Petition and was filed beyond the statute of limitations period.

### 2. **Merits**

The Court will address only those items that appear to have relevance to being "inflammatory" pieces of evidence in Exhibits R through R-27 and T through T-87, because this claim is without a stated factual basis.

Exhibits R through R-27 include medical records admitted to show Garrett suffered a corneal abrasion from Petitioner poking his thumb in Garrett's eye. Medical records of the victim are admissible to show that the battery occurred; Petitioner does not explain how they were so inflammatory that they should not have been admitted.

Petitioner includes part of the transcript where the prosecutor showed Petitioner that Garrett's name was on the affidavit in support of the criminal complaint for Petitioner's 1995 conviction and asked Petitioner to acknowledge it. (Exhibit T-57, Dkt. 69-7, p. 92.) In pretrial conference before Petitioner testified at trial, Petitioner's counsel

**MEMORANDUM DECISION AND ORDER - 81**

wanted to clarify the scope of impeachment regarding Petitioner's three prior felonies, because one of them was "battery on a correction officer," which counsel feared might be used by the jury as improper propensity evidence in the present battery on a peace officer charge. The prosecutor agreed that the particular evidence about "battery on a correction officer" should not be admitted, and he agreed to not mention the nature of the crime, but stated that the burglary and aggravated DUI could be discussed on cross-examination. Given that stipulation, the Court did not enter an order limiting use of the evidence. (State's Lodging A-7, pp. 145-47.)

During cross-examination, the prosecutor asked Petitioner if he remembered seeing Garrett's name on some of Petitioner's paperwork. Petitioner said, "No, I don't." The prosecutor then said he was going to show Petitioner the paperwork from the 1995 case. Petitioner himself objected. The court said he could not object, but his attorney had to do so. The prosecutor then showed Petitioner the affidavit and the complaint from Petitioner's 1995 case and told him to look at it but not read it aloud, because it wasn't going to be submitted to the jury. Petitioner noted that Garrett was the signator on each document. Petitioner's defense counsel then said, "Your Honor, I guess, no objection." (State's Lodging A-7, pp. 164-167.)

The rules of evidence allow an attorney to use any document to refresh a witness' recollection on cross-examination, but the document is not admitted or shown to the jury unless opposing counsel chooses to disclose it. *See* 98 C.J.S. Witnesses § 560. The attorneys' stipulation was the equivalent of a limiting order, and thus there was no

deficient performance or prejudice resulting from that line of questioning or the manner in which the prosecutor used the documents not admitted into evidence.

Petitioner has not shown that trial counsel was ineffective because he failed "to object to highly inflammatory inadmissible evidence" or failed to "request a limiting instruction." (Dkt. 44, p. 27.) This claim will be denied on the merits de novo and dismissed with prejudice.

## Claim 30/T

Claim 30 is that trial counsel was ineffective for committing "cumulative errors," including a "failure to interview readily available witnesses" (*Id.*)

### 1.  **Statute of Limitations**

This claim does not arise out of the same conduct, transaction, or occurrence as the peace officer, prosecutorial misconduct, arraignment, or appellate counsel claims attempted to be set out in the original Petition. Therefore, it does not relate back to the original Petition and was filed beyond the statute of limitations period.

### 2.  **Merits**

The Idaho Court of Appeals rejected Petitioner's claim because he "failed to make a necessary showing he is entitled to relief on any of his ineffective assistance of counsel claims," and, thus, there were no errors to cumulate. (State's Lodging D-17, p. 13.)

To establish prejudice under *Strickland v. Washington*, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional *errors*, the result of the proceeding would have been different. *Williams v. Taylor*, 529 U.S. 362,

**MEMORANDUM DECISION AND ORDER - 83**

390-91 (2000) (emphasis added). Thus, the nature of the *Strickland* standard itself assesses the cumulative effect of an attorney's serious errors. That is, a court may find cumulative prejudice from multiple deficiencies of counsel instead of addressing prejudice from individual deficiencies. *Harris By & Through Ramseyer v. Wood*, 64 F.3d 1432, 1439 (9th Cir. 1995). In this case, Petitioner has failed to show that trial counsel made errors so prejudicial—either alone or cumulated—that the result of the proceeding would have been different. This claim fails under both the deferential and the de novo standard of review and will be denied and dismissed with prejudice.

### Claim 31/U

Claim 31 is that trial counsel was ineffective because he failed "to prepare [a] psychologist expert or provide [such an] expert with readily … available material and then present [such an] expert" as a witness, which "caused devastating effect[s] on sentencing"; moreover, trial counsel "should have … challenged or objected to" the testimony of Dr. Smith, who purportedly "was a long time friend of the victim" (Dkt. 44, p. 27.)

1. **Statute of Limitations**

This claim does not arise out of the same conduct, transaction, or occurrence as the peace officer, prosecutorial misconduct, arraignment, or appellate counsel claims attempted to be set out in the original Petition. Therefore, it does not relate back to the original Petition and was filed beyond the statute of limitations period.

**MEMORANDUM DECISION AND ORDER - 84**

2. **Merits**

Petitioner has not provided any admissible evidence that Dr. Richard V. Smith was a "long time friend of the victim." Nor has Petitioner provided any evidence that, had another psychological study been done by a different psychologist, the findings would have been different. The findings of Dr. Smith appear consistent with Petitioner's history and words and actions set forth in the record. (See Exhibit U, 69-8.) This claim will be denied on the merits de novo and dismissed with prejudice.

**Claim 32/V**

Claim 32 is that trial counsel was ineffective for failure to "object to inaccuracies" in the "pre-sentencing investigation report." (Dkt. 44, p. 27.)

1. **Statute of Limitations**

This claim does not arise out of the same conduct, transaction, or occurrence as the peace officer, prosecutorial misconduct, arraignment, or appellate counsel claims attempted to be set out in the original Petition. Therefore, it does not relate back to the original Petition and was filed beyond the statute of limitations period.

2. **Merits**

Petitioner has filed a copy of the presentence report as Exhibit V, found at Docket 69-8, *et seq*. Petitioner has failed to point to any substantial inaccuracies in the presentence investigation report. The report contains eight pages of prior charges and crimes and sets forth the disposition of each, for example, whether the charge was dismissed or he was found guilty. Petitioner has failed to show that his counsel performed

**MEMORANDUM DECISION AND ORDER - 85**

deficiently at sentencing, or that Petitioner was harmed by any inaccuracy in the report. This claim will be denied on the merits on de novo review and dismissed with prejudice.

### Claim 33/V

Claim 33 is that appellate counsel Robyn Fyffe was ineffective for failing to raise trial counsel's failure to "object to inaccuracies" in the pre-sentence investigation report (Dkt. 44.)

The *Strickland* principles apply to determining ineffective assistance of appellate counsel claims. *Evitts v. Lucey*, 469 U.S. 387 (1985). To show prejudice on appeal, a petitioner must show that his attorney failed to raise an issue obvious from the trial record that probably would have resulted in reversal.  *See Miller v. Keeney*, 882 F.2d 1428, 1434 n.9 (9th Cir. 1989).  If a petitioner does not show that an attorney's act or omission would have resulted in reversal, then he cannot satisfy either prong of *Strickland*: appellate counsel was not ineffective for failing to raise such an issue, and petitioner suffered no prejudice as a result of it not having been raised.  *See Miller*, 882 F.2d at 1435. "Effective legal assistance" does not mean that appellate counsel must appeal every question of law or every nonfrivolous issue requested by a criminal defendant.  *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983).

"Effective legal assistance" does not mean that appellate counsel must appeal every question of law or every nonfrivolous issue requested by a criminal defendant. *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983). "[N]othing in the Constitution" requires "judges to second-guess reasonable professional judgments and impose on appointed

counsel a duty to raise every 'colorable claim' suggested by a client." *Id.* at 754. "[T]he process of winnowing out weaker claims on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Burger v. Kemp*, 483 U.S. 776, 784 (1987) (internal citations and punctuation omitted).

Because Petitioner has failed to show which inaccuracies his trial counsel should have objected to, and has failed to show that this claim would have been more successful than those she chose to bring, this claim fails on the merits under de novo review and will be dismissed with prejudice.

### 1.  Statute of Limitations

Although Plaintiff attempted to set out a bare claim of "ineffective assistance of appellate counsel" in his original Petition, he did not provide any facts supporting the claim. The Idaho Court of Appeals' opinion attached to the original Petition is from Petitioner's direct appeal, and it also contains no ineffective assistance of appellate counsel claims. Therefore, this claim does not relate back to the original Petition and is untimely.

### 2.  Merits

As noted directly above in the discussion of Claim 32, Petitioner has not shown that there were substantial inaccuracies in the presentence investigation report such that his trial counsel performed deficiently or that the failure to correct them prejudiced his

case, or that this claim could have been brought properly on direct appeal. Therefore, this claim will be denied on the merits de novo and will be dismissed with prejudice.

### Claim 34/W

Claim 34 is that trial counsel Michael Tribe was ineffective because he failed to uphold a "duty of loyalty, a duty to advocate the defendant[']s cause, a duty to consult with the defendant on important decisions, a duty to keep defendant informed of important developments in the court of the prosecution, and a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process" (Dkt. 44, p. 27.)

### 1. **Statute of Limitations**

This claim does not arise out of the same conduct, transaction, or occurrence as the peace officer, peace officer, prosecutorial misconduct, arraignment, or appellate counsel claims attempted to be set out in the original Petition. Therefore, it does not relate back to the original Petition and was filed beyond the statute of limitations period.

### 2. **Merits**

Counsel Michael Tribe was appointed to represent Petitioner on March 14, 2008. (State's Lodging A-3, p. 18.) Tribe filed a memorandum in support of Petitioner's pro se motions, including a motion for a new trial. (State's Lodging A-3, p. 80.) On May 19, 2008, Petitioner complained to the Court that Tribe had not adequately informed him about the proceedings or visited him at the jail. (State's Lodging A-11, pp. 28-29.) Mr.

**MEMORANDUM DECISION AND ORDER - 88**

Tribe responded that he had made three visits to the jail to see Petitioner and that he spoke to the State before the hearing. (*Id*., p. 30.)

On September 5, 2008, Petitioner asked for a new attorney, stating that Tribe was not adequately communicating with him, given the serious nature of the persistent violator charge. He complained that Tribe did not address all of Petitioner's issues in his pro se filings when Tribe prepared a supporting memorandum. (*Id*., p. 72.) Also on that day, Petitioner decided to represent himself, and Tribe was to function only as stand-by counsel. (State's Lodging A-3, pp. 266-67.) But, on October 6, 2009, Tribe was reappointed as counsel for Petitioner.

Tribe also worked on the second persistent violator action. Petitioner argued that Tribe did not present an opening statement, witnesses, or a closing argument at the second persistent violator trial. However, the trial consisted only of the State proving that Petitioner had been convicted of the prior felonies. Petitioner argued in state court that Tribe was ineffective for failing to argue that one of his prior felony convictions should not have been considered because he had his civil rights restored after completing his sentence. The state district court rejected that argument, because the persistent violator statute provides for no such exemption. (State's Lodging C-7, pp. 249-50.)

Petitioner has not shown that Tribe performed deficiently because Petitioner had, in fact, been convicted of the prior felonies. Nor has Petitioner shown that Tribe's performance prejudiced his defense—Petitioner does not show that any particular argument or act would have changed the outcome of Petitioner's second persistent

violator trial. This claims fails on the merits on de novo review. It will be denied and dismissed with prejudice.

### Claim 35/X

Claim 35 is that trial counsel Daniel Brown—who worked on a motion for new trial for Petitioner—was ineffective because he did not consult with Petitioner, "never subpoena[ed] any witnesses to testify on behalf of Garrett not being a police officer or having the duties to perform them," and Brown could have "establish[ed] facts through expert witnesses, which were favorable and would have shown that Alan Garrett was not certified to perform such duties," proving the victim was "not a police officer" (*See* Exhibit X.)

1. **Statute of Limitations**

This claim does not arise out of the same conduct, transaction, or occurrence as the peace officer, prosecutorial misconduct, arraignment, or appellate counsel claims attempted to be set out in the original Petition. Therefore, it does not relate back to the original Petition and was filed beyond the statute of limitations period.

2. **Merits**

Brown appeared at a March 8, 2010, hearing on Petitioner's pro se motion for a new trial based on the "new" information that Garret did not complete POST certification within one year of his hire date. At the beginning of the hearing, Petitioner told the court that he had never seen Brown nor spoken to him. The Court gave them a few minutes to consult. Brown argued Petitioner's motion in a clear and creative manner, given that its

**MEMORANDUM DECISION AND ORDER - 90**

subject matter did not fit the statutory requirements for a new trial. Brown argued

Petitioner's points and alternatively Brown's own points, where they differed. A-13, p.

17, 31. Petitioner made suggestions to Brown on several arguments he wanted made

(some of which were relevant arguments, while others were not), but Brown generally

made them.

Brown's representation at the hearing was adequate, and he gave an exceptional

amount of deference to pro se arguments Petitioner urged him to make. Even if Brown

was deficient in his performance, the Court sees nothing in the record that shows

Petitioner was prejudiced by the manner in which Brown argued the motion.

The Court has rejected Petitioner's argument that the 22-day delay in Garrett

becoming certified as a peace officer had any bearing on the outcome of Petitioner's case.

Petitioner has not shown that his proposed witnesses would not have made a difference,

because their testimony was not relevant to the interpretation of the statutes governing the

issue. Therefore, counsel could not have performed deficiently regarding that issue, and

Petitioner's defense was not prejudiced as a result of Brown not doing anything more

regarding the timing of Garrett's certification issue. Claim 35 will be denied on the merits

de novo and dismissed with prejudice.

### Claim 36/Y to 41/Y

Claim 36 is that direct appeal counsel Robyn Fyffe rendered ineffective assistance

by failing "to file significant [portions] of the record," insofar as "sufficiency of the

evidence was an issue at trial" (*id*., p. 29). Claim 37 is that Fyffe "failed to litigate"

Petitioner's claims on direct appeal (*id*.); Claim 38 is that Fyffe was ineffective for failing "to request transcripts of entire voir dire proceedings" (*id*.); Claim 39 is that Fyffe was ineffective for failing to "raise obvious [issues] in the record, such as whether [the trial court] erred in failing to allow [the POST certificate] [into] evidence" (*id*.); Claim 40 is that Fyffe failed to raise trial counsel's ineffectiveness where the claims could be resolved on the record (*id*.); and Claim 41 is that all of Fyffe's errors amounted to ineffective assistance of direct appeal counsel (id., p. 30).

### 1. **Statute of Limitations**

Although Petitioner attempted to set out a bare claim of "ineffective assistance of appellate counsel in his original Petition, he did not provide any facts supporting the claim. The Idaho Court of Appeals' opinion attached to the original Petition is from Petitioner's direct appeal, and it does not contain any ineffective assistance of appellate counsel claims. Therefore, this claim does not relate back to the original Petition and is untimely.

### 2. **Merits**

Petitioner points to Exhibits Y, Q-7 through Q-9, and W through W-2 to support this claim. He asserts that counsel failed to request transcripts of the entire voir dire proceedings and submit other necessary portions of the record; that she failed to raise the issue of the trial court not allowing the POST certificate into evidence; that she failed to raise the "lesser included offense jury instructions" claim; and that she failed to raise

**MEMORANDUM DECISION AND ORDER - 92**

ineffective assistance of trial counsel claims that could have been resolved on the record on direct appeal. (Dkt. 44, pp. 30 to 34.)

Petitioner does not reveal what additional voir dire transcripts would have shown and is not permitted to simply speculate on how the transcripts would have helped his appeal. Direct appeal counsel argued the late POST certification theory thoroughly; because it was rejected in wholesale fashion, counsel was not deficient in failing to argue the finer point as to whether the POST certificate should have been admitted as evidence or in providing other supporting documents for the record. As explained elsewhere in this Order, the "lesser included offense jury instructions" claim is without merit. Finally, Petitioner has not shown that there is any ineffective assistance of trial counsel claims that could have been resolved on the record on direct appeal; such claims usually are brought in post-conviction actions because they require extra-record evidentiary development.

These claims have no merit and fail on de novo review for failure to show deficient performance or prejudice of direct appeal counsel. They will be denied and dismissed with prejudice.

### Claim 42/Z

Claim 42 is that "Counselors provided ineffective assistance of counsel in each and every regard as specified in A through Z an is incorporated into this paragraph as rested in full." (Dkt. 44, p. 30.) The law does not provide for a way to cumulate alleged errors of different attorneys across different proceedings. Each attorney is reviewed on

**MEMORANDUM DECISION AND ORDER - 93**

his or her own performance. This Court has addressed and rejected Petitioner's trial counsel cumulative error argument above. The Court finds no error in direct appeal counsel's performance and no prejudice; therefore, there are no errors to analyze to show cumulative prejudice. This claim fails to state a claim upon which relief can be granted and also fails on the merits for lack of supporting facts. It will be denied and dismissed with prejudice.

### Claim 43/A to 46/A

This claim has several subparts. Petitioner asserts that trial counsel Kent Jensen was ineffective because he failed to raise a subject matter and personal jurisdictional challenge, "failed to protect Herrera's due process through investigation before trial, during trial, during [motions] for new trial," and "failed to move the district court for an order to compel the Sheriff of Cassia County, [the victim], and POST officials to give account of how a travesty of justice could take place." (Dkt. 44, p. 31.) Petitioner also asserts that Kent Jensen, Mike Tribe, Daniel Brown, and appellate counsel Robyn Fyffe failed to protect Petitioner's due process through investigation beyond trial, during trial, during motion for new trial, for failure to move the district court to compel the sheriff of Cassia County, Garrett, and POST officials show a travesty of justice could take place and how Garrett fell through the cracks of not complying with statute.

### 1. **Statute of Limitations**

These claims do not arise out of the same conduct, transaction, or occurrence as the peace officer, prosecutorial misconduct, or arraignment claims attempted to be set out

**MEMORANDUM DECISION AND ORDER - 94**

in the original Petition. While Petitioner included a vague "appellate counsel claim in his Petition, he provided no facts whatsoever in the Petition. Therefore, these claims do not relate back to the original Petition and were filed beyond the statute of limitations period.

2. **Merits**

Petitioner alleges that the trial court lacked "subject matter jurisdiction and personal jurisdiction" to enter a judgment of conviction. This claims arises from Petitioner's successive second post-conviction action that the Idaho courts lacked jurisdiction over his criminal case because the POST chairman and executive director lacked authority to sign off on a certificate of completion without the approval of the POST Board itself; therefore, Garrett's certificate is void.

This argument is centered on Petitioner's statutory construction argument, which the Idaho Supreme Court and this Court have rejected. Further, Petitioner's argument has nothing to do with personal jurisdiction. That is, personal jurisdiction in a criminal case is established when the defendant is accused of committing a crime in the geographic area in which the court sits. Petitioner's subject matter jurisdiction argument is also misplaced. In Idaho, the state district courts have original jurisdiction over all cases and proceedings in law and in equity, including criminal cases. Idaho Code § 1-705; Idaho Const. art. V, § 20. These subclaims are without merit and will be denied and dismissed without prejudice.

All of the other subclaims focus on the fact that Garrett certified as a peace officer 22 days after his one-year anniversary and on Petitioner's argument that the POST

certification awarded Garrett was void. As discussed above, the late certification issue had no bearing on Petitioner's defense and is an unreviewable matter of interpretation of state law.

Accordingly, these subclaims fail to state a claim upon which relief can be granted and are denied on the merits.

### Claim 47/B

Claim 47is that the Idaho Court of Appeals "created an [ex-post] facto law and unlawfully modified an unambiguous statute contrary to law," which "violat[ed] Herrera's 14 amendment [right] to due process and equal protection under the U.S. Constitution" (Dkt. 44, p.32);

1. **Statute of Limitations**

This claim does not arise out of the same conduct, transaction, or occurrence as the peace officer, prosecutorial misconduct, arraignment, or appellate counsel claims attempted to be set out in the original Petition. Therefore, it does not relate back to the original Petition and was filed beyond the statute of limitations period.

2. **Merits**

The interpretation of state statutes by the Idaho state appellate courts is at the heart of this claim. As with Claim 1, above, it is a noncognizable issue, even when cloaked in terms of the Fourteenth Amendment's Due Process Clause. In *Swarthout v. Cooke*, the United States Supreme Court reiterated that "'federal habeas corpus relief does not lie for

**MEMORANDUM DECISION AND ORDER - 96**

errors of state law.'" 562 U.S. at 219 (citing *Estelle v. McGuire,* 502 U.S. 62, 67 (1991), and *Lewis v. Jeffers,* 497 U.S. 764, 780 (1990)).

Petitioner's claim about the late POST certification does not state an ex post facto violation. The ex post facto provisions of the Constitution "forbid[] the Congress and the States to enact any law which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Weaver v. Graham*, 450 U.S. 24, 28 (1981) (internal citation and punctuation omitted); U.S.Const., Art. I, § 9, cl. 3; Art. I, § 10, cl. 1.

In addition, Petitioner has stated insufficient facts to proceed under the Fourteenth Amendment Equal Protection Clause. Under the Equal Protection Clause, "all persons similarly circumstanced shall be treated alike" by governmental entities. *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920). However, "[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." *Tigner v. Texas*, 310 U.S. 141, 147 (1940). There are no facts in the record showing that Petitioner was treated differently from another person under the Idaho statutes at issue.

These claims are subject to denial for failure to state a claim upon which relief can be granted and on the merits under the de novo review standard.

### Claim 48/B

Claim 48 is that direct appeal counsel was ineffective by not "ask[ing] for a rehearing" before the Idaho Court of Appeals, in order to challenge the above-mentioned

MEMORANDUM DECISION AND ORDER - 97

"[ex-post] facto law" (Dkt. 44, p. 32.) For the reasons set forth in the discussion of Claim 47 and lack of a showing of deficient performance or prejudice, this claim will be denied on the merits under the de novo review standard and dismissed with prejudice.

## Claim 49/C

Claim 49 is that the Idaho Supreme Court, presumably on direct appeal, "purposely denied petitioner's petition for review so the unlawful modification set by the Court of [Appeals] could stand" (Dkt. 44, p. 33). This is a noncognizable issue. The Idaho Supreme Court is the "final judicial arbiter of the meaning of state statutes." *See Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1127 (9th Cir. 2006).[8] Accordingly,  "federal habeas corpus relief does not lie for errors of state law." *Swarthout*, 562 U.S. at  219. This claim fails to state a claim upon which relief can be granted.

## Claim 50

Claim 50 is that direct appeal counsel, possibly in connection with the Idaho Supreme Court's denial of a petition for review, was ineffective because she "had a duty

---

[8] *Sass* was overruled on other grounds by *Hayward v. Marshall*, 603 F.3d. 546 (9th Cir. 2010) (en banc) (any right to release on parole arose from state law, and did not arise from federal constitution), which itself was overruled by implication in *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) ("No opinion of ours supports converting California's 'some evidence' rule into a substantive federal requirement. The liberty interest at issue here is the interest in receiving parole when the California standards for parole have been met, and the minimum procedures adequate for due-process protection of that interest are those set forth in *Greenholtz* [*v. Inmates of Neb. Penal and Correctional Complex*, 442 U.S. 1, 12 (1979).]").

**MEMORANDUM DECISION AND ORDER - 98**

to defend [Herrera's] Constitutional rights from crafty lawyers and the members who have been entrusted to protect and apply the [law] equally, while dressed in sacred black robes." (Dkt. 44, p. 34).

Under the de novo review standard, the Court has reviewed the appellate briefing prepared by direct appeal counsel and finds it appropriately focused on several key claims. Petitioner has delineated several claims he desired counsel to raise on appeal, which the Court addressed herein above—none of which have merit. In addition, the standard of law permits counsel to select only a few good issues for appeal. She did so in this instance. Petitioner has not provided sufficient facts to show that direct appeal counsel performed deficiently or that he was prejudiced by counsel's decisionmaking or briefing. Hence, counsel was not ineffective. This claim will be denied on the merits under a de novo review standard and dismissed with prejudice.

## ORDER

**IT IS ORDERED:**

1. Respondent's Motion for Partial Summary Dismissal (Dkt. 51) is conditionally GRANTED in part and DENIED in part as set forth above. Petitioner may file a response to this Order of no more than 25 pages if he desires to contest the dismissal of his claims on the merits. Respondent may file a reply of the same length, if desired.

2. Petitioner's Motion for Hearing on Respondent's Motion for Partial Summary Judgment Dismissal and for Appointment of Counsel (Dkt. 59) is

DENIED.

3.  Petitioner's Motions for Extensions of Time to File Response (Dkt. 56, 67) are GRANTED, to the extent that the Court has considered everything Petitioner has filed to date as his "response."

4.  Respondent shall file an answer to Claims 8, 9, 10, 23(m), and 26 within **90 days** after entry of this Order. The answer should also contain a brief setting forth the factual and legal basis of grounds for dismissal and/or denial of the remaining claim. Petitioner shall file a reply (formerly called a traverse), containing a brief rebutting Respondent's answer and brief, which shall be filed and served within **30 days** after service of the answer. Respondent has the option of filing a sur reply within **14 days** after service of the reply. At that point, the case shall be deemed ready for a final decision.

5.  No party shall file supplemental responses, replies, affidavits or other documents not expressly authorized by the Local Rules without first obtaining leave of Court.

6.  No discovery shall be undertaken in this matter unless a party obtains prior leave of Court, pursuant to Rule 6 of the Rules Governing Section 2254 Cases.

**MEMORANDUM DECISION AND ORDER - 100**

7. Counsel for Respondent shall review State's Lodging A-3 against its defenses, and reproduce for the Court any document it finds relevant to any of its defenses or to the merits of the remaining claims; or it may reproduce all of the light documents, if it desired.

DATED: September 30, 2020

B. Lynn Winmill
U.S. District Court Judge

**MEMORANDUM DECISION AND ORDER - 101**