UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| VALENTINO ALEX HERRERA,<br><br>    Petitioner,<br><br>v.<br><br>ALBERTO RAMIREZ,<br><br>    Respondent. | Case No. 1:15-cv-00525-BLW<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

Petitioner Valentino Alex Herrera is proceeding on his Amended Petition for Habeas Corpus. (Dkt. 44.) On September 30, 2020, the Court granted Respondent's Motion for Summary Dismissal of all of Petitioner's habeas corpus claims with the exceptions of Claims 8, 9, 10, 23(m), and 26. (Dkt. 70.)

Respondent filed an Answer requesting dismissal of the remaining claims. (Dkt. 76.) Specifically, Respondent reasserts that Claim 23 is barred by the AEDPA statute of limitation and Claims 8.2 and 26 are procedurally defaulted. Respondent also argues that Claims 8.1, 8.2, 9, 10, 23 and 26 all fail on the merits, whether reviewed deferentially or de novo. (Dkt. 76.) Petitioner has filed a Reply and a Supplemental Reply. (Dkts. 80, 87.) The Court now considers these remaining claims.

**MEMORANDUM DECISION AND ORDER - 1**

## FACTUAL BACKGROUND

Petitioner was serving a 19-day sentence in the Cassia County Jail for driving without privileges. Alan Garrett, who was a former Cassia County deputy sheriff and court bailiff, incarcerated on a DUI conviction, was also an inmate at the jail.

When each inmate arrives at the jail, he is given a rigid plastic coffee mug in his packet of personal items. Jail inmates eat meals together and take turns wiping down tables afterward. Alan Garrett decided to wipe down tables after breakfast on June 4, 2006. Petitioner left the table to go to the bathroom. Garrett moved his own coffee cup and then Petitioner's coffee cup to wipe underneath, setting the cups down in different places after he did so.

Inmate Roger Galow[1] witnessed the incident and testified as follows at Petitioner's criminal trial:

> Alan [Garrett] was wiping down the tables and Mr. Valentino's cup was there and stuff. He moved it just a little bit and Mr. Valentino looked at me and said he was mad about it and that he was going to make Alan pay. And I said: "Man, it's just a cup of coffee, you know." And he said: "No, he cost me five years." I didn't know what he meant at that time.
>
>        * * *
>
> I said: "Five years for a cup of coffee?" And he said: "No, he put me in prison for his statement." And I said: "Let it go," and he said, "No." And Alan was sitting on the other side of the table and he yelled at Garrett about moving his

---

[1] Elsewhere in the record Galow's name is spelled "Gallow."

**MEMORANDUM DECISION AND ORDER - 2**

> coffee or something, and when Garrett turned around, he
> threw the coffee in his face.

(State's Lodging A-7, p. 98 (punctuation altered).)

Galow testified that, after coffee was thrown in Garrett's face, Garrett got up to clean his glasses, and Petitioner shoved Garrett's glasses into his eyes. In what Galow classified as a defensive effort, Garrett "came across the table and grabbed ahold of [Petitioner] and pushed him against the wall and told him to knock it off." (*Id.*, p. 99-100.) Galow said Garrett told Petitioner, "We don't need this here." (*Id.*, p. 100.)

Galow further testified:

> At that point [Petitioner] took his cup and shoved it in Mr. Garrett's eyes, breaking the cup. Then they wrestled to the floor.
>
> * * *
>
> And all Garrett did was grab hold of [Petitioner] and just kept holding. And [Petitioner] kept screaming: "Let me go. Let me go. You started all of this."

(*Id.*, p. 100 (parentheticals added, punctuation altered).) Galow testified that Petitioner threw the first punch, and Garrett never threw a punch. (*Id.*, p. 101.)

As a result of the altercation, the State charged Petitioner with battery under Idaho Code § 18-903, enhanced from a misdemeanor to a felony pursuant to former I.C. 18-915(d) (2001), based on the allegation that Petitioner committed the battery because of Garrett's former status as a "peace officer." The State later filed an amended information seeking a persistent violator enhancement for a third felony conviction. (State's Lodgings A-1, pp. 54-57; B-21, pp. 1-2.)

**MEMORANDUM DECISION AND ORDER - 3**

Cassia County Deputy Sheriff Tim Pethtel[2] interviewed Garrett after the incident. (State's Lodging A-7, pp. 118-19.) In that interview, Garett told Pethtel that he and Petitioner did not have any problems between them, but he had heard that Petitioner "was mad at him because of him signing the warrants and putting him away for five years." (*Id.*, p. 119.) Garrett said part of his former job was to regularly sign warrants for people to be arrested in Cassia County, but that he didn't have anything further to do with the cases or arrestees. Garrett told Pethtel that Petitioner may have seen Garrett's name on the warrant and assumed that he was the one who had arrested him. (*Id.*, p. 118.)

Deputy Pethtel also interviewed Petitioner after the incident. Petitioner told him that he had left the table and his coffee cup for a moment, and when he returned, his cup had been moved, and he assumed it was moved by Garrett, who was wiping tables off. Petitioner reported that he had asked Garrett why he had moved Petitioner's coffee cup, and Garrett began to approach him in a threatening manner, and so Petitioner threw coffee on him to stop him, and then he hit Garrett with the coffee cup when the coffee did not stop him. (*Id.*, pp. 116-17.) Pethtel said Petitioner said he had a problem with Garrett because he had been with the sheriff's office and he believed Garrett "had sent him to prison for five years." (*Id.*, p. 117.) Petitioner admitted at trial that he discussed the incident with Deputy Pethtel, but he denied saying anything like "Garrett put me away for five years." (*Id.*, p. 162.)

---

[2] Elsewhere in the record Pethtel's name is spelled "Pethel."

**MEMORANDUM DECISION AND ORDER - 4**

At trial Petitioner testified that he went to the restroom, came back, couldn't find his coffee cup, and asked where it was. Garrett said, "Oh, it's right here." Petitioner testified about what happened next:

> I just grabbed my cup and I walked around to the other side of the table and I was drinking it, because the TV is on that side, and I started watching it and Galow and Garrett were just talking back and forth.
>
> * * *
>
> I told [Garrett] if he would do me a favor and please don't be touching my things, you know: It's not a hard think to do, if you would, please. And I did stipulate: Please don't grab my coffee and move it around anymore.
>
> * * *
>
> I think he took it as – I don't know how, but he got up, just stood straight up and said: I didn't touch your coffee. And he just blew up in an explosive manner that surprised me and he started saying that: I'm tired of you calling me a rat cop—a rat cop, or something to that nature. For me it's foggy for the simple fact that I didn't know what he was talking about.
>
> * * *
>
> And I said: If you want my coffee that bad you don't have to try to take it. And he was standing up approximately from me to you.
>
> I just threw it at him, but not towards his face or anything, just the bottom of the torso area. And's he's still a young man and he's quite agile and he dodged it and I grazed a little bit of his leg, or something like that.

(*Id.*, pp. 153-56.)

On cross-examination, Petitioner admitted that he was arrested and served a five-year prison sentence on a felony charge in 1995. Petitioner's charges were filed during the time when Garrett worked for Cassia County. (*Id.*, p. 164.) The prosecutor showed

**MEMORANDUM DECISION AND ORDER - 5**

Petitioner the 1995 affidavit in support of the criminal complaint that bore Alan Garrett's typed name and signature. (*Id*., pp. 165-67.) Petitioner said he didn't recall seeing Garrett's name on his criminal case paperwork. (*Id*., pp.167-68.) Petitioner admitted that Garrett brought him to court from the jail a number of times in 1995, and that Garrett had been the bailiff during Petitioner's 1995 criminal case (*Id*., p. 168.)

Cassia County Sheriff's Deputy Cary Bristol testified that Alan Garrett's personnel file showed that Garrett took his oath of office as a law officer on October 2, 1989, and that he passed Peace Office Standards Training (POST) on October 24, 1990. (*Id*., pp. 127-28; 122-24.) Bristol testified that not every employee at the Sheriff's Office is required to be POST certified. (*Id*., pp. 124-25.) Employees not under the requirement included civilian employees, dispatchers, and some bailiffs. (*Id.,* p. 125.) Bristol testified that Garrett's responsibilities were *not* limited to serving as a bailiff; he also filled in to "do a little extra patrol of the fair grounds," "traffic control," and "a lot of transports." (*Id*.) Garrett was POST-trained because his extra duties "may have required him to make a custodial arrest." (*Id*., p. 126.) Bristol testified that Garrett was considered "an actual deputy with the Sheriff's Office," and that he faced life and death risks in his tasks, including making arrests with or without warrants, walking inmates from the jail to the courthouse, or driving inmates from the courthouse to Twin Falls. (*Id*., pp. 126-27.)

In addition to the felony battery charge, the prosecutor also charged Petitioner with a persistent violator enhancement. Petitioner was offered a plea bargain agreement in exchange for dropping the persistent violator charge, but he did not accept it. Petitioner

**MEMORANDUM DECISION AND ORDER - 6**

was convicted by jury of the felony battery charge and by a separate jury of the persistent violator enhancement. (State's Lodging A-1, pp.95-96, 113; A-7, pp.217-24.) He was sentenced to five years fixed on the battery charge, with a sentence of five to twenty-five years on the persistent violator charge, to run consecutive to the battery charge. (State's Lodging C-1, p. 7.)

There were several procedural oddities in Petitioner's case. The State filed an amended information to add the persistent violator charge about three months prior to trial; Petitioner's counsel received the amended information but did not notice (1) that it had not been accompanied by a motion to amend or (2) that Petitioner was never arraigned on the enhancement. The State provided discovery on the persistent violator charge, and so Petitioner's counsel was well-aware of the factual basis for the charge. Petitioner, however, urged his counsel to file a motion to dismiss the charge on the first day of trial. Upon learning of the omissions, the trial court permitted the amended information and simply arraigned Petitioner on the first day of trial.

After his arraignment, Petitioner admitted to the three convictions underlying the persistent violator charge. After Petitioner was convicted by jury based on the stipulation, Petitioner filed a motion for a new trial on the charge, which the trial court granted. The charge was heard by a new jury, which convicted him again.

At Petitioner's sentencing, the trial court erred in pronouncing a sentence that merged the sentence on the battery conviction with the persistent violator sentence. During direct appeal, the parties stipulated to the error and the appellate matter was

**MEMORANDUM DECISION AND ORDER - 7**

stayed. Petitioner was resentenced to the same number of years—this time stated properly in the judgment.

When the appellate stay was lifted, the various claims and issues from the above proceedings were consolidated for direct appeal, whereupon the conviction and sentences were affirmed. Petitioner filed a post-conviction action and a successive post-conviction action but received no relief.

After trial, Petitioner discovered that, when Garrett first became a sheriff's deputy on October 2, 1989, he had one year to complete his POST certification to become a certified officer under Idaho Code 19–5109(3), but he was 22 days late in completing his certification (October 24, 1990). After certification Garrett continued to serve in his county job for approximately ten years. Petitioner had contact with Garrett in his official capacity only after he completed his certification. This fact was the subject of a new trial motion, which the state district court denied and the appellate court rejected on appeal.

Another of Petitioner's arguments was that Garrett was not a peace officer, but only a court bailiff, and that the misdemeanor charge should not have been raised to a felony. After an evidentiary hearing on the matter, the trial court found that there was sufficient evidence to have the jury decide the issue. On appeal, Petitioner's argument of insufficient evidence was rejected.

**MEMORANDUM DECISION AND ORDER - 8**

On October 28, 2015, Petitioner filed his original federal Petition for Writ of Habeas Corpus.[3] In this habeas corpus proceeding, among other claims, Petitioner faults the following counsel for ineffective assistance during his state criminal case: Kent Jensen, who represented Petitioner in pretrial proceedings, the battery charge trial, the first sentence enhancement trial, and the first sentencing proceeding; Michael Tribe, who represented Petitioner on a motion for a new trial and the second sentencing proceeding; Daniel Brown, who represented Petitioner on a motion for a new trial based on the "new" information that Garrett did not complete POST certification within one year of his hire date; and Robyn Fyfe, who represented Petitioner on direct appeal.

## STANDARD OF LAW

### 1.  Deferential Merits Review Standard of Law (AEDPA)

A challenge to a state court appellate judgment that addressed the merits of a federal claim is governed by Title 28 U.S.C. § 2254(d), as amended by the AEDPA. The AEDPA limits relief to instances where the state court's adjudication of the petitioner's claim:

> 1.  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[3] This is the "mailbox rule" filing date. *See Houston v. Lack*, 487 U.S. 266 (1988) (a legal document is deemed filed on the date a prisoner delivers it to the prison authorities for filing by mail, rather than the date it is actually filed with the clerk of court).

**MEMORANDUM DECISION AND ORDER - 9**

2.  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d). A federal habeas court reviews the state court's "last reasoned decision" in determining whether a petitioner is entitled to relief. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991).

A federal court cannot grant habeas relief simply because it concludes in its independent judgment that the state court's decision is incorrect or wrong; rather, the state court's application of federal law must be objectively unreasonable to warrant relief. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Bell v. Cone*, 535 U.S. 685, 694 (2002). If fairminded jurists could disagree on the correctness of the state court's decision, then relief is not warranted under § 2254(d)(1). *Harrington v. Richter*, 562 U.S. 86, 101 (2011). The Supreme Court emphasized that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (internal citation omitted).

Though the source of clearly established federal law must come only from the holdings of the United States Supreme Court, circuit precedent may be persuasive authority for determining whether a state court decision is an unreasonable application of Supreme Court precedent. *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999). However, circuit law may not be used "to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013).

**MEMORANDUM DECISION AND ORDER - 10**

When a petitioner contests the reasonableness of the state court's factual determination based entirely on the state court record, a federal court must undertake a § 2254(d)(2) analysis. *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004), *abrogated on other grounds as recognized in Murray v. Schriro*, 745 F.3d 984 (9th Cir. 2014). There are two general ways to challenge factual findings as unreasonable under § 2254(d)(2). "First, a petitioner may challenge the substance of the state court's findings and attempt to show that those findings were not supported by substantial evidence in the state court record. Second, a petitioner may challenge the fact-finding process itself on the ground that it was deficient in some material way." *Hibbler v. Benedetti*, 693 F.3d 1140, 1146 (9th Cir. 2012) (internal citations omitted).

### 2.  De Novo Merits Review Standard of Law

The United States Supreme Court has held that federal courts are not required to address a procedural issue before deciding against the petitioner on the merits. *Lambrix v. Singletary*, 520 U.S. 518 (1997); *cf. Franklin v. Johnson*, 290 F.3d 1223 (9th Cir. 2002) ("appeals courts are empowered to, and in some cases should, reach the merits of habeas petitions if they are, on their face and without regard to any facts that could be developed below, clearly not meritorious despite an asserted procedural bar"); *cf. Hudson v. Jones*, 351 F.3d 212 (6th Cir. 2003); *cf.* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

Where procedural issues are complex or would require evidentiary development, the Court may instead address the merits of a claim de novo. Under de novo review, if the factual findings of the state court are not unreasonable, the Court must apply the presumption of correctness found in 28 U.S.C. § 2254(e)(1) to any facts found by the state courts. *Pirtle*, 313 F.3d at 1167. As in the pre-AEDPA era, a district court can draw from both United States Supreme Court and well as circuit precedent, limited only by the non-retroactivity rule of *Teague v. Lane*, 489 U.S. 288 (1989).

### 3. Harmless Error Standard of Law

Generally, even if a constitutional error occurred, a petitioner is entitled to federal habeas relief only if he "can establish that [the error] resulted in 'actual prejudice.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Under the *Brecht* standard, an error is harmful, and habeas relief must be granted, only if the federal court has "grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict." *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995) (internal quotation marks omitted). However, some types of claims "are analyzed under their own harmless error [or prejudice] standards, which can render *Brecht* analysis unnecessary." *Jackson v. Brown*, 513 F.3d 1057, 1070 (9th Cir. 2008). Ineffective assistance of counsel claims are included in this latter category. *Musladin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009).

## DISCUSSION OF CLAIMS

### <u>Claim 8.1</u>

Claim 8.1 is that the prosecutor committed prosecutorial misconduct by using improper cross-examination, when the prosecutor asked Petitioner to verify if the State's witnesses were lying under oath and to comment on their credibility. (Dkt. 44, pp. 17-18.) Petitioner asserts that the prosecutor wrongfully "elicit[ed] testimony by which Mr. Herrera was forced to accuse the state's witnesses of perjury." (State's Lodging B-6, p. 28.) However, Petitioner's trial counsel did not object to this line of questioning at trial; therefore, the question before the Idaho Court of Appeals was whether the alleged misconduct constituted fundamental error. (State's Lodging B-6, p. 30.)

The colloquy at issue consisted of the following:

| [Prosecutor] Q. | Deputy Pethtel lied under oath when he said you told him about the grudge you had against Alan [Garrett]? |
| --- | --- |
| [Petitioner] A. | Did he? |
| Q. | You tell me. |
| A. | I can't say that he lied because that's— that's not my call. |
| Q. | Okay. Roger Galow wasn't telling the truth when he said that you were talking about [Garrett] and going to prison? |
| A. | Stated in those terms, what he said, yeah, that's correct. |
| Q. | So Roger Galow lied under oath? |
| A. | I didn't say he lied. I just said he didn't tell the truth. |

Q.      Fair enough. Alan Garrett was under oath and did not tell the truth?

A.      I don't understand your question. You're just telling me—I don't know, you could be talking about a baseball game.

Q.      Alan Garrett was here in court yesterday. You heard his testimony?

A.      I did.

Q.      He lied?

A.      I can't say that he lied, but some of the things that I heard him testify to, he wasn't telling the truth.

Q.      What about our other witness Cary Bristol? Was he not telling the truth?

A.      Pertaining to—

Q.      Anything.

A.      I think about the only thing I heard him say that wasn't truthful was when he asked the last questions and he acted confused.

(State's Lodging A-7, pp. 169-70.)

On appeal, Petitioner argued that this cross-examination colloquy rose to the level of fundamental error because "testimony by one witness that another witness was, or was not, telling the truth" is inadmissible, and "it is well-established that a question calling for the opinion of one witness as to the truthfulness of another [witness] is an invasion of the province of the jury." (State's Lodging B-6, p. 30 (citing I.R.E. 608(a) and *State v. Christiansen*, 163 P.3d 1175, 1180 (Idaho 2007)).)

**MEMORANDUM DECISION AND ORDER - 14**

The Idaho Court of Appeals determined that Petitioner's claim was a principle of state law, not federal, law, clarifying that, while a "question calling for the opinion of one witness as to the truthfulness of another witness's testimony is generally inadmissible" under the Idaho Rules of Evidence, it "does not … constitute a constitutional violation." (State's Lodging B-21, p. 13.) The court relied on *State v. Jackson*, 256 P.3d 784 (Idaho Ct. App. 2011), where the court determined: "We have found no Idaho authority that invoked a constitutional provision as a basis for excluding vouching testimony" and "[h]ence, … we hold that Jackson's assertion, raised for the first time on appeal, that the vouching testimony of the victim's mother was inadmissible, does not present an issue of fundamental error." *Id*. at 788.

This Court agrees with Respondent that there is no United States Supreme Court precedent supporting Petitioner's claim, but it is grounded in only a principle of state law, upon which federal habeas relief cannot be based. *See* 28 U.S.C. § 2254(a) (habeas relief can be granted "only on the ground that [a person] is in custody in violation of the Constitution or laws or treaties of the United States"). The United States Supreme Court has reiterated that "'it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court.'" *Richter*, 562 U.S. at 101 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)).

The Court alternatively agrees that this line of questioning was within the scope of cross-examination because Petitioner testified on direct examination that he did not make

the statements Roger Galow and Officer Pethtel attributed to him during their trial testimony, and, therefore the cross-examination did not "infect the trial with unfairness" such that due process would be offended. (*See* Dkt. 76, pp. 34-35.) In many cases where this principle is at issue, a lawyer has asked a mental health professional to comment on whether a child victim of a sexual assault crime was telling the truth or not. Contrarily, here, this was simply a cross-examination technique to ask Petitioner whether his own version of events could be true, given that it was contrary to the other witnesses' statements of what Petitioner told them in the past. In other words, it was a line of questioning about *Petitioner's* credibility, not about other witnesses' credibility, just couched in an inferential manner. The bottom line is that due process is not offended by questioning a witness about why his story doesn't match the other witnesses.

Accordingly, for all of these reasons, Petitioner has failed to meet the deferential standard for relief under 28 U.S.C. § 2254(d). Claim 8.1 will be dismissed with prejudice.

### Claim 8.2

Claim 8.2 is that the prosecutor committed misconduct during closing argument when, "despite knowing Garrett had more than one felony, the state said that Garrett was more credible than Herrera because Garrett had just one felony, where Herrera had three." (Dkt. 44, p. 18.) Petitioner's attorney did not object to this statement during trial; thus, he must satisfy the fundamental error rule.

The seeds of this issue are found in a colloquy during the preliminary hearing, not the jury trial. The preliminary hearing transcript of July 14, 2006, shows that Mr. Cannon

asked Garrett if he had "been convicted of felony thefts and DUI." (State's Lodging A-5, p. 8.) Garrett replied "Yes," and confirmed that he had no other felony convictions on his record. (*Id.*)

However, at trial, Garrett made no mention of any felony convictions other than the DUI conviction for which he was serving time. (State's Lodging A-7, pp. 49-50, 70-71.) Neither attorney asked him if he had multiple felonies at trial. The preliminary hearing colloquy was not mentioned. After reviewing all of the supplemental state of Idaho and FBI records that document Garrett's criminal history, the Court agrees with Respondent that, "[i]t is entirely possible … that after the preliminary hearing the parties realized that Garrett had only one felony conviction." (State's Lodging B-21; *see* State's Lodgings G-1 to G-4.)

After the jury heard evidence during trial that Petitioner had three prior felonies on his record and Garrett had one, Mr. Cannon argued in closing:

> The crime is a crime and the victim is a victim regardless of where the crime happens. It's certainly not surprising that when somebody in the jail is beat up, that person is going to have some questions raised about their credibility. We wouldn't expect to have a group of nuns or a bishop and a priest and a minister hanging out in cell block 1500. All the witnesses, defendants and victims are going to have some kind of a past or they wouldn't be there. So I don't see that it makes a lot of sense to get all wrapped up in Alan Garrett's credibility.
>
> If it was his word against Valentino's word alone, that might be more of an issue. But even if that's all we had, and if Mr. Jensen wants to look at people's pasts, you've got a victim with one felony conviction and a defendant with three. Who's more or less credible? Yet I'm not sure we really need

MEMORANDUM DECISION AND ORDER - 17

> to get into that. Alan Garrett's testimony was corroborated by
> more than one witness.

(State's Lodging A-7, pp. 210-11.)

To clarify the facts, the Court ordered supplementation of the record. Idaho state records reflect that, as of January 3-4, 2006, the date of the incident, Garrett had only the following conviction of record in Idaho: Case No. CR-2004-722: I.C. § 18-8004, driving under the influence, a felony. (State's Lodgings G-1, pp. 1-2; G-3, pp. 23-30.)

National records were more difficult to review. The national FBI report indicates that Plaintiff had misdemeanor convictions from Utah, but no felonies of record from Utah or any other state besides Idaho. (*See* State's Lodgings G-1, G-2, G-3, & G-4.) The national FBI report also seemed to show a second Idaho felony DUI conviction dated 8/13/2006 (after the preliminary hearing but before the trial). (State's Lodging G-2, p. 11.) However, the Idaho Supreme Court's iCourt public records website shows no corresponding criminal case for a 2006 second felony DUI conviction, only probation violations during that year, arising from the 2004 conviction.[4]

The Court again ordered supplementation of the record to clarify this apparent discrepancy. Upon order of the Court, Respondent conducted research on this issue and provided clarifying information that the 8/13/2006 event was merely a fingerprinting event, and not a separate conviction. The explanation is that "[p]rior to a 2014 database

---

[4] *See* https://mycourts.idaho.gov/odysseyportal/Home/Dashboard/29?p=0

**MEMORANDUM DECISION AND ORDER - 18**

upgrade, 'when a defendant was fingerprinted' at an IDOC prison 'following commitment,' IDOC and NCIC records would 'show the commitment as a new arrest,' when it was not." (*See* Dkts. 86, p. 3; Dkt. 86-2, Katherine Blades Affidavit.) Petitioner has provided no contrary documents or official's statements that would support the notion that Garrett had two felony convictions of any kind, rather than one DUI conviction, from any jurisdiction, prior to Petitioner's trial.

On habeas review, the standard for a claim of prosecutorial misconduct is a "narrow one of due process," arising from the Constitution, and "not the broad exercise of supervisory power" within a court's discretion. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)). For example, a prosecutor's comments or actions that may be considered inappropriate under the rules of fair advocacy, or even reversible error on direct review, will not warrant federal habeas relief unless the alleged misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly*, 416 U.S. at 643.

This Court has reviewed the prosecutor's closing argument and concludes that, in light of the extensive search of government records, there is no existing evidence that Garrett had two felonies on his record before trial. Because the prosecutor's comments were *true*, they did not infect the trial with unfairness as to result in a denial of due process. Both parties were inmates with a felony conviction—which bears on the credibility of *both*. The prosecutor actually said that after he made the comparison—"All the witnesses, defendants and victims are going to have some kind of a past or they

wouldn't be there. So I don't see that it makes a lot of sense to get all wrapped up in Alan Garrett's credibility." (State's Lodging A-7, p. 211.)

Even assuming for the sake of argument that the prosecutor's comparison was factually incorrect (and Petitioner has not shown it was incorrect) and Garrett had felony theft convictions as well as a DUI conviction on his record at the time of trial, there was still sufficient other evidence to show that Petitioner committed the crime. Garrett's version of the story was corroborated by the other witnesses, while Petitioner's story was internally inconsistent, nonsensical in part, and had no corroboration. Therefore, the claim does not amount to fundamental error, because it did not infect the entire trial with unfairness such that another trial should be granted. Therefore, habeas corpus relief is not warranted, under either the deferential standard or a de novo standard.

### Claim 9

Claim 9 is that the prosecutor "committed misconduct when he shifted the burden of proof and told the jury that Herrera had the burden to show reasonable doubt." (Dkt. 44, pp. 25-26.) In closing argument, the prosecutor made the following statement that sort of addressed the burden of proof, but actually made no sense: "If the defendant has shown any reasonable doubt it's your duty to convict, and that's what I'm asking you to do." (State's Lodging A-7, p. 203; State's Lodging B-21, p. 10, n.3.) Defense counsel objected, but instead of taking corrective action, the trial court merely said, "Well, that's in the nature of argument and you can certainly argue that if you wish." (State's Lodging A-7, p. 204.)

MEMORANDUM DECISION AND ORDER - 20

The Idaho Court of Appeals held that the trial court's inaction was error and that it "is prosecutorial misconduct to misrepresent the State's burden to prove an accused's guilty beyond a reasonable doubt." The Court of Appeals continued, "to eliminate any possible jury confusion, the district court should have sustained the objection and cured the misstatement by admonishing the jury that the burden of proving the case beyond a reasonable doubt lies with the State." (State's Lodging B-21, p. 10.)

However, the Court of Appeals determined the error was harmless. Instead of sustaining the objection, the trial court invited the attorneys to address the statement in argument, and Petitioner's counsel immediately argued to the jury:

> If there's one thing that needs to be clear, it's that the State of Idaho has the burden in this case. Mr. Herrera does not have the burden of proving anything. The State of Idaho has the burden of not only proving that this crime was committed, but they also have the burden to prove beyond a reasonable doubt that self defense was not used by Mr. Herrera. I want that to be crystal clear at this point.

(State's Lodging A-7, pp. 204-205.)

On rebuttal, the prosecutor also began with a clarification:

> Mr. Jensen's certainly right that the State has the burden of proof. That's my job. I don't disagree with that at all. The defendant doesn't have to put on a single shred of evidence. I have no problem with being required to prove a case beyond a reasonable doubt.

(*Id.*, pp. 210-211.)

On this record, the Idaho Court of Appeals determined: "In light of the parties' clear agreement on the burden of proof, and a jury instruction in accord that had been

given prior to the closing arguments, we are confident beyond a reasonable doubt that the prosecutor's misstatement had no effect on the verdict and was harmless." (State's Lodging B-21, p. 10.) The Court of Appeals also rejected Petitioner's argument that the prosecutor's statement could be classified as a "jury instruction." (*Id.*, p. 11.)

The formal jury instructions regarding burden of proof were legally correct: "If any of the above [elements of the crime] has not been proven beyond a reasonable doubt, you must find the defendant not guilty. If each of the above has been proven beyond a reasonable doubt, then you must find the defendant guilty of battery." (State's Lodging A-7, p. 189.) "You must indicate on the verdict form whether or not both of the above circumstances have been proven beyond a reasonable doubt." (*Id.*) "The burden is on the prosecution to prove beyond a reasonable doubt that the battery was not justifiable." (*Id.*, p. 191.)[5]

This Court agrees with the Idaho Court of Appeals' decision that it was error for the trial court to fail to sustain the original objection. However, the statement the prosecutor made was nonsensical and, as such, could have had little effect on the jury.[6]

---

[5] Though the pre-proof jury instruction reading was waived after closing arguments (Instructions #1-10), neither party disputes that the jury was formally instructed by the judge that the prosecution bore the burden of proof in the case.

[6]The State explained:

> [T]he sheer irrationality of the misstatement weighs against any jurors putting stock in it. The prosecutor didn't just say "Herrera had the burden to show reasonable doubt," as Herrera generously paraphrased it. (State's Lodging B-6, p.23.) The prosecutor said that if Herrera showed any reasonable doubt then the jurors would have to convict, as opposed to acquit. (State's Lodging A-7,

**MEMORANDUM DECISION AND ORDER - 22**

The defense attorney clarified the burden of proof immediately. The prosecutor agreed and restated the correct burden of proof on rebuttal. The jury instructions correctly stated that the prosecution bore the burden of proof. The Court concludes that this error did not have a substantial and injurious effect or influence in determining the jury's verdict. The Idaho Court of Appeals' opinion is not contrary to, or an unreasonable application of, governing United States Supreme Court precedent. It also fails under a de novo review standard.

### Claim 10

Claim 10 is that Petitioner did not have counsel at his original arraignment or until his preliminary hearing on June 30, 2006. (Dkt. 44, p. 18.) The record reflects that Petitioner's counsel did *not* appear with him at his initial arraignment on August 3, 2006. (State's Lodging A-1, p. 38.) At that time, the district court explained Petitioner's plea options, read him all of his rights, explained that a guilty plea would waive certain rights, gave him a copy of the charging Information, and reviewed the charge and maximum penalties. (*Id*.) Without the advice of counsel, Petitioner waived the right to have the Court read the Information to him in open court. (*Id*.) Petitioner asked for a continuance of the arraignment so that he could have the benefit of the advice of counsel before entering a plea. The court agreed. (*See id*., p. 38.) At the next arraignment hearing, on

---

p.203.) This makes no sense. It was therefore less likely that jurors would have been swayed by this nonsensical misstatement, in the brief amount of time it lingered before correction.

(Dkt. 76, p. 42.)

**MEMORANDUM DECISION AND ORDER - 23**

August 24, 2006, Petitioner had counsel present and entered a "not guilty" plea. (State's Lodging A-1, pp. 41-42.)

A defendant's right to effective assistance of counsel "is a fundamental component of our criminal justice system." *United States v. Cronic*, 466 U.S. 648, 653 (1984). "[T]he right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial." *Id*. at 658. If defense counsel's poor performance results in a "complete breakdown of the adversarial process" or a defendant is completely denied counsel at a critical stage of his trial, the presumption of an unfair trial arises. *Id*. at 657-658, 659. While arraignment is considered a critical stage of trial, *see Missouri v. Frye*, 566 U.S. 134, 140 (2012), the Court still must review the circumstances of the "critical stage" to determine whether it is proper to presume prejudice.

In this case, the essential portions of the arraignment that make it a "critical stage" were continued from a date when Petitioner appeared without counsel to a date when Petitioner could appear with counsel. Neither this Court nor Petitioner has identified any harm that occurred at the original arraignment when the critical portions of the original arraignment were continued. Petitioner has not shown any detriment that constituted a situation where ""[a]vailable defenses [were] irretrievably lost, if not then and there asserted," such as in *Hamilton v. Alabama*, 368 U.S. 52 (1961). In that jurisdiction, a defendant charged with a capital crime "must make a claim of the insanity defense at the arraignment, or it is deemed waived." *Id*. at 54. Because Plaintiff's facts are unlike

**MEMORANDUM DECISION AND ORDER - 24**

*Cronic* and *Hamilton*, the Court concludes that the Idaho Court of Appeals' decision was not contrary to, or an unreasonable application of, United Sates Supreme Court precedent. It likewise fails under a de novo review standard. This claim is subject to dismissal with prejudice.

### Claim 23m

Claim 23m is that trial counsel was ineffective because he failed "to object to improper cross-examination" by the prosecutor. (Dkt. 44, p. 25.) Petitioner exhausted this claim on post-conviction review.

The clearly-established law governing a Sixth Amendment claim of ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984). The *Strickland* standard requires a petitioner to show that (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness, and that (2) the petitioner was prejudiced by the deficient performance. *Id.* at 684.

In assessing trial counsel's performance under *Strickland*'s first prong, a reviewing court must view counsel's conduct at the time that the challenged act or omission occurred, making an effort to eliminate the distorting lens of hindsight. *Id.* at 689. The court must indulge in the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.*

In assessing prejudice under *Strickland*'s second prong, a court must find that, under the particular circumstances of the case, there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.* at 684,

694. A reasonable probability is one sufficient to undermine confidence in the outcome. *Id*. at 694.

A petitioner must establish both deficient performance and prejudice to prove an ineffective assistance of counsel claim. 466 U.S. at 697. On habeas review, the court may consider either prong of the *Strickland* test first, or it may address both prongs, even if one is deficient and will compel denial. *Id.*

The foregoing standard, giving deference to counsel's decisionmaking, is the de novo standard of review. Another layer of deference—to the state court decision—is afforded under AEDPA. In giving guidance to district courts reviewing *Strickland* claims on habeas corpus review, the United States Supreme Court explained:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." *Williams*, *supra*, at 410, 120 S.Ct. 1495. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Richter*, 562 U.S. at 112.

Petitioner cites to his Exhibits M through M-3 for the facts supporting this claim. The prosecutor asked Petitioner whether he had been imprisoned for a felony charge in 1995, whether Garrett was a bailiff in 1995, and whether Petitioner's criminal paperwork

MEMORANDUM DECISION AND ORDER - 26

had Garrett's name on it. (Exhibit M-1, Dkt. 69-4, pp. 75-76.) Petitioner testified that he did not remember seeing Garrett's name in Petitioner's paperwork. The prosecutor started to hand Petitioner a copy of the paperwork, when Petitioner said, "Your Honor, I'm going to have to object." *Id.*, p. 76. The Court said that Petitioner's attorney would have to object, and Petitioner replied, "I'm just saying wasn't this an issue yesterday?" *Id.*

Petitioner was referring to a prior in camera conference where the parties stipulated that the *subject matter* of Petitioner's 1995 conviction—battery on a correctional officer—would not be disclosed to the jury because the jury might wrongfully think that conviction had something to do with the present battery on a peace officer charge or might wrongfully use the information as propensity evidence. (*See* Exhibit M, Dkt. 69-4, p. 74.)

After Petitioner raised his "objection" to allude to the prior in camera stipulation, his counsel did not raise the same objection on Petitioner's behalf, and the prosecutor impeached Petitioner with two exhibits—an affidavit and complaint from his 1995 felony charge—which Petitioner admitted did have Garrett's name on them. (State's Lodging, A-7, pp.165-68.) Petitioner also admitted that, after the conviction for the 1995 case, he went to prison for five years. (State's Lodging A-7, p.168.) The prosecutor did *not* try to raise the subject matter of the 1995 conviction in front of the jury.

On post-conviction review, the state district court determined:

> Mr. Herrera contends that Mr. Jensen failed to object to improper cross-examination by the prosecutor. (Petition 10.) In support of this claim, Mr. Herrera provides excerpts of a transcript in which the prosecutor asks Mr. Herrera

**MEMORANDUM DECISION AND ORDER - 27**

questions regarding a prior conviction. (*See* Petition Ex. M.) The nature of the prior conviction is not discussed; the focus of the prosecutor's questions is Mr. Herrera's knowledge that Mr. Garrett's name was on the criminal complaint and supporting affidavit in a prior case. (*See* id.)

This claim of ineffective assistance of counsel is bare and conclusory. Mr. Herrera has not provided admissible evidence showing how the cross-examination questions at issue were improper in any way. He has not provided admissible evidence to show that any such objection would have been sustained by the court. Assuming that [trial counsel] had objected and the court had sustained the objection, Mr. Herrera has not provided admissible evidence to show a reasonable probability that the outcome of the proceedings would have been different.

Mr. Herrera has not established a prima facie case that [trial counsel] provided ineffective assistance in this regard. He has not provided admissible evidence to show that [trial counsel's] conduct fell below an objective standard of reasonableness. He has not provided admissible evidence to show a reasonable probability that, but for [trial counsel's] alleged error, the result of the proceedings would have been different. For these reasons, the State's motion for summary disposition is granted as to this claim.

(State's Lodging C-7, pp.2630, 2642.)

Petitioner raised this claim on post-conviction appeal, where he asserted that trial counsel failed to "object to any impeachment of Mr. Herrera with his prior felonies" and wrongfully stipulated to "Mr. Herrera's three felony convictions," with "no tactical reason for doing so[;] ignorance of the law is the only explanation." (State's Lodging D-3, p.45.) The Idaho Court of Appeals, citing *Strickland*, affirmed summary dismissal of all of Petitioner's ineffective assistance claims:

**MEMORANDUM DECISION AND ORDER - 28**

Herrera has not shown that trial counsel's conduct before and during trial amounts to deficient performance. Nor has he shown that he was prejudiced even if counsel's conduct fell below the *Strickland* standard for deficiency. In the absence of evidence to the contrary, we apply "a strong presumption that counsel's performance fell within the wide range of professional assistance." *State v. Shackelford*, 150 Idaho 355, 383, 247 P.3d 582, 610 (2010); *State v. Hairston*, 133 Idaho 496, 511, 988 P.2d 1170, 1185 (1999). Based on the record presented to the district court, we cannot conclude the district court erred in summarily dismissing this post-conviction claim.

(State's Lodging D-17, p.12.)

Petitioner errs in arguing that his counsel had no strategic reason to stipulate to the felony information. Prior felony convictions often are properly admitted into evidence at criminal trials for impeachment and credibility purposes. Therefore, here, Petitioner's counsel was trying to reduce any harm that might come from the introduction of Petitioner's prior felonies. As shown in Exhibit M, during the in camera conference, counsel explained that he was concerned that the jury would infer some relationship between the prior battery on a correctional officer conviction and the present charge that would prejudice the defense. Petitioner has not shown that counsel's chosen course of action amounted to an error "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

Nor has Petitioner shown how counsel's chosen course of action prejudiced his case. Petitioner has not shown that the three prior felonies would *not* have been admitted had counsel not proposed the stipulation to refrain from disclosing the subject matter of the prior battery conviction. Accordingly, this claim fails on both prongs of the

MEMORANDUM DECISION AND ORDER - 29

ineffective assistance of counsel standard of law, according to either the doubly deferential standard of *Richter* or a de novo standard.

### Claim 26

Claim 26 is the ineffective assistance of counsel counterpart to Claim 9: trial counsel was ineffective because he failed to object to the improper comments made by the trial court after the prosecutor made the nonsensical burden-of-proof comment in closing argument. (Dkt. 44, p. 26.) The judge said only, "Well, that's in the nature of argument and you can certainly argue that if you wish. So, you may proceed [with your closing argument], Mr. Jensen." (Dkt. 44, p. 26.) As discussed above, the judge should have sustained the objection and made a corrective statement to the jury.

In the *Strickland* analysis context, the Court concludes that Petitioner's counsel performed deficiently for failing to object to the judge's comments, which were contrary to law. This fulfills the first prong of *Strickland*. However, the second prong remains unfulfilled. Petitioner was not prejudiced by the nonsensical comments for the same set forth above in the Discussion of Claim 9—mainly that both attorneys immediately told the jury the correct burden of proof and the jury instructions contained the correct burden of proof. Accordingly, the Idaho courts' rejection of this claim is not contrary to, or an unreasonable application of United States Supreme Court precedent. This claim also fails under a de novo review standard. It will be denied and dismissed with prejudice.

**MEMORANDUM DECISION AND ORDER - 30**

# ORDER

**IT IS ORDERED:**

1.     The Amended Petition for Writ of Habeas Corpus (Dkt. 44) is DISMISSED with prejudice.

2.     The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If Petitioner files a timely notice of appeal, the Clerk of Court shall forward a copy of the notice of appeal, together with this Order, to the United States Court of Appeals for the Ninth Circuit. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED: March 4, 2022

B. Lynn Winmill
U.S. District Court Judge